Jane DOE 30'S MOTHER, Individually, and as Parent, Guardian, and Next Friend of Jane Doe 30, a Minor Child, Individually, and on behalf of all others similarly situated, Plaintiffs,

v.

Earl B. BRADLEY, M.D.; Bay Bees Pediatrics, P.A., a Delaware Corporation; Beebe Medical Center, Inc., a Delaware Corporation; Medical Society of Delaware, a Delaware Corporation; James P. Marvel, Jr., M.D.; Carol A. Tavani, M.D.; Lowell F. Scott, Jr., M.D.; Lowell F. Scott, M.D., P.A., John J. Ludwicki, M.D., the Pediatric and Adolescent Center in Lewes, Chartered; and Nicholas Berg, M.D., Defendants.

C.A. Nos. N10C–05–023 JRS, N10C–10–317 JRS.

Superior Court of Delaware, New Castle County.

Submitted: Jan. 27, 2012.
Decided: March 29, 2012.
Redacted: May 8, 2012.*

---

* Memorandum Opinion was originally Filed Under Seal. The confidential material contained herein has been redacted.

430

Ben T. Castle, Esquire and Bruce L. Hudson, Esquire, Hudson & Castle Law, LLC, Wilmington, Delaware; Craig A. Karsnitz, Esquire, Richard A. DiLiberto, Jr., Esquire and Neilli M. Walsh, Esquire, Young Conaway Stargatt & Taylor, LLP, Georgetown, Delaware; Bartholomew J. Dalton, Esquire, Dalton & Associates, P.A., Wilmington, Delaware; Chase T. Brockstedt, Esquire, Bifferato Gentilotti LLC, Lewes, Delaware; Philip C. Federico, Esquire, Schochor, Federico & Staton, Baltimore, Maryland; Alexander J. Palamarchuk, Esquire, Alan L. Frank Law Associates, P.C., Jenkintown, Pennsylvania. Attorneys for Class Plaintiffs.

Collins J. Seitz, Jr., Esquire, Seitz Ross Aronstam & Moritz, LLP, Wilmington, Delaware; Matthew F. Boyer, Esquire and Josiah R. Wolcott, Esquire, Connolly Bove Lodge & Hutz, LLP, Wilmington, Delaware; John D. Balaguer, Esquire and Christine Kane, Esquire, White & Williams, LLP, Wilmington, Delaware. Attorneys for Defendants, Medical Society of Delaware, James P. Marvel, Jr., M.D., and Carol A. Tavani, M.D.

Jeffrey M. Austin, Esquire and Colleen D. Shields, Esquire, Elzufon Austin Reardon Tarlov & Mondell, P.A., Wilmington, Delaware. Attorneys for Defendants, Lowell F. Scott, Jr., M.D. and Lowell F. Scott, M.D., P.A.

James E. Drnec, Esquire and Melony Anderson, Esquire, Balick & Balick, LLC, Wilmington, Delaware; Natalie C. Magdeburger, Esquire and Chantelle M. Custodio, Esquire, Hodes, Pessin & Katz, P.A., Towson, Maryland; Michael C. Rosendorf, Esquire, Law Office of Michael C. Rosendorf, Stanton, Delaware; M. Natalie Sherry, Esquire, Kramon & Graham, P.A., Baltimore, Maryland. Attorneys for Defendants, John L. Ludwicki, M.D. and the Pediatric and Adolescent Center in Lewes, Chartered.

Michael W. Arrington, Esquire, Parkowski Guerke & Swayze, P.A., Wilmington, Delaware. Attorney for Defendant, Nicholas Berg, M.D.

SLIGHTS, J.

## I.

Notwithstanding an emerging trend to the contrary, in Delaware, a plaintiff still must establish that a defendant owed her a duty of care in order to state a *prima facie* claim of negligence.[1] Regardless of how morally, ethically or socially deplorable a defendant's conduct may be viewed by other constituencies, in the eyes of the law, the defendant may not be held to answer in negligence unless and until the court determines, as a matter of law, that the defendant owed a duty of care to the plain-

---

1. *See* Weinrib, *Duty and the Structure of Negligence. The Passing of Palsgraf?*, 54 Vand. L.Rev. 803 (April, 2001) (noting that the then-proposed Restatement (Third) of Torts, now adopted in whole or in part in several jurisdictions, purported to render "duty [ ] a non-issue" in the negligence calculus); *Riedel v. ICI Americas, Inc.*, 968 A.2d 17 (Del.2009) (rejecting the Restatement (Third) of Torts because its revised approach to the duty analysis was "too wide a leap [from settled Delaware law] for this Court to take").

tiff. This is and should remain the law of Delaware.

This opinion marks the second occasion the Court has considered whether certain defendants in this class action, each of whom are Delaware physicians or groups of Delaware physicians, owed a duty to class plaintiffs to protect them from sexual abuse allegedly perpetrated against them by their pediatrician, also a Delaware physician and now a convicted sex offender. After considering a motion for judgment on the pleadings with respect to an earlier version of the class action complaint, the Court determined that the complaint failed to allege facts, even if proven, that would trigger a tort duty of care on the part of the then-moving defendants to report the pediatrician to law enforcement or regulatory authorities, or otherwise to protect the pediatrician's patients from harm.[2] In so holding, the Court noted that certain allegations in the complaint suggested that other facts might be plead that could be sufficient to implicate a duty of care under theories of tort liability recognized in Delaware law. Accordingly, the Court granted leave to amend the complaint so that the class plaintiffs could try again to plead viable claims of negligence. The class plaintiffs have filed their amended complaint and several defendants have now moved to dismiss it.

The defendants' refrain is a familiar one—the class plaintiffs have not and cannot plead facts that are sufficient to impose upon the defendants a duty to act for the protection of individuals with whom they had no "special relationship," as that term has been defined and interpreted under Delaware law. Having carefully reviewed the motions and responses, the Court again must agree. The class plaintiffs have failed to plead facts (or otherwise to suggest that such facts exist) that would justify the imposition of a duty upon these defendants to act for the benefit and protection of the class when no "special relationship" exists between the defendants and the class plaintiffs or the defendants and the offending pediatrician. To the extent the claims in the amended complaint raise claims of nonfeasance, the viability of which depends upon the existence of such a "special relationship," the motions to dismiss must be **GRANTED with prejudice.**

But the class plaintiffs have made new allegations that some of the defendants (those affiliated with the Medical Society of Delaware) affirmatively committed to undertake a duty to protect the pediatrician's patients from harm. These allegations, if proven, would be sufficient to trigger a duty on the part of the physicians/defendants who undertook to protect patients to discharge that duty with reasonable care. The motions to dismiss as to these claims, therefore, must be **DENIED.**

The class plaintiffs also have submitted evidence and factual argument in response to the motions to dismiss that suggest other defendants (physicians in the Sussex County medical community) either maintained doctor-patient relationships with some of the class plaintiffs, or took affirmative steps to refer some of the class plaintiffs to the offending pediatrician, when they knew or should have known that the pediatrician was sexually abusing his patients. While the amended complaint, at best, only alludes to these facts, the extraneous evidence and briefing sub-

---

2. At the time the motion for judgment on the pleadings with respect to the first complaint was filed, many of the defendants had not yet entered appearances in this litigation. More have done so now and they have added their motions to the renewed motions to dismiss that have been filed by the defendants involved in the first round of motion practice.

mitted by plaintiffs' counsel suggest that viable allegations of medical negligence and/or common law negligence might be brought against certain of the individual physician defendants by members of the class with whom they maintained a doctor-patient relationship. Accordingly, the motions to dismiss as to these claims must be **GRANTED without prejudice,** to reflect that the amended complaint, as plead, fails to state any claim of negligence but might, if further amended, state viable individual claims of common law negligence and/or medical negligence against the "individual defendants" as defined later in this opinion.

## II.

Plaintiff, Jane Doe 30, is a child born on June 17, 1997, and a former patient of Earl B. Bradley, M.D. ("Dr. Bradley"), a Delaware licensed physician who specialized in pediatric medicine.[3] Jane Doe 30 has sustained physical, mental and emotional damages as a result of abuse perpetrated against her by Dr. Bradley while she was a patient in Dr. Bradley's medical practice located in Sussex County, Delaware.[4] She and her mother represent a class of potentially hundreds, if not thousands, of former child patients of Dr. Bradley and their parents in pursuing compensatory and exemplary damages against Dr. Bradley, his medical practice and other defendants for harm proximately caused by Dr. Bradley's abusive conduct.[5]

Defendant, Beebe Medical Center, Inc. ("Beebe"), is a hospital operating in Lewes, Delaware. It is alleged that Beebe employed Dr. Bradley as a staff physician and Chief of Pediatrics between 1994 and 1999, despite knowing that he was the subject of a prior complaint of improper sexual contact with a young patient in Pennsylvania.[6] Following his employment at Beebe, Dr. Bradley continued to have hospital privileges and to hold administrative positions and "on call" duties at Beebe through 2009.[7] In 1996, Beebe received complaints from several sources regarding Dr. Bradley's improper conduct with children in his medical practice. The complaints were investigated and, for a brief period of time after the complaints were received, Beebe required Bradley to be chaperoned during office visits.[8] During this time, "Dr. Bradley remained an employee of Beebe and no reports [of the suspected abuse] were made by Beebe to professional associations ... or to independent authorities." [9]

Defendant, Medical Society of Delaware ("Medical Society"), is a voluntary, non-

---

**3.** Am. Compl. ¶¶ 1, 2. When deciding a motion to dismiss pursuant to Delaware Superior Court Rule of Civil Procedure 12(b)(6), all well-plead allegations must be accepted as true. *See Spence v. Funk*, 396 A.2d 967, 968 (Del.1978). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the claims, and not whether the plaintiff will ultimately prevail. *Id.* Accordingly, this factual summary sets forth pertinent allegations in the amended complaint as if they were true facts. As discussed below, where indicated, this factual summary also refers to matters outside of the pleadings for the purpose of determining whether further amendments to the complaint are appropriate.

**4.** Am. Compl. at 2 (Nature of the case).

**5.** *Id.* The class was certified by stipulated order without objection from any defendant. As will be discussed below, this opinion may well have an impact on the manner in which the class is constituted.

**6.** *Id.* at ¶ 17.

**7.** *Id.* at ¶¶ 20–21.

**8.** *Id.* at ¶ 22.

**9.** *Id.*

profit association of physicians within Delaware. Its primary purpose is to aid physicians in the practice of medicine and to ensure that patients of Delaware physicians receive quality medical care.[10] One of its goals is to "enhance the betterment of public health and to enlighten the public at large on medical matters of general and special concern."[11] The Medical Society has no statutory or regulatory authority to sanction or discipline Delaware physicians; such authority rests solely with the Delaware Board of Medical Practice (the "Board").[12] The Physicians' Health Committee ("PHC"), a committee within the Medical Society, is tasked with the role of monitoring the professional behavior of the Medical Society's physician members.[13]

Defendant, James P. Marvel, M.D. ("Dr. Marvel"), is a Delaware physician, a member and past president of the Medical Society, and a former member of the PHC (in 2004).[14] Dr. Marvel has maintained hospital privileges at Beebe Hospital and served on its committees and administration for many years.[15] In 2004 or 2005, Dr. Marvel was interviewed in connection with an investigation of Dr. Bradley by the Delaware State Police.[16] As a result of his relationship with Beebe, the Medical Society, the

PHC, and his interview with the police, it is alleged that Dr. Marvel "knew of allegations of misconduct by Bradley."[17] Dr. Marvel failed to report this information to the Board or any other authority.[18]

Defendant, Carol A. Tavani, M.D. ("Dr. Tavani"), is a Delaware physician, a member of the Medical Society and a former long-serving chairman of the PHC.[19] In 2004, Lynda Barnes, Dr. Bradley's sister and office manager, contacted the Medical Society with concerns about: (1) reports that Dr. Bradley was improperly touching his patients; (2) her observations that Dr. Bradley's mental condition was deteriorating; and (3) her observations that Dr. Bradley's medical practice was falling apart.[20] Dr. Tavani, chairman of the PHC at the time, spoke with Ms. Barnes about her concerns and eventually presented Ms. Barnes' concerns to the PHC.[21] Ms. Barnes also spoke with Dr. Marvel about her concerns at Dr. Tavani's direction.[22] Both doctors assured Ms. Barnes that "the Medical Society took her concerns very seriously."[23] Indeed, the PHC took affirmative steps to consider Ms. Barnes' reports, some of which Ms. Barnes outlined in a letter directed to the Medical Society,[24] and ultimately decided that the mat-

---

10. *Id.* at ¶ 7.

11. *Id.*

12. *See* Medical Society Defs.' Mot. To Dismiss ("Med Society Defs.' MTD") at 3 n. 4, D.I. 36726267 (Mar. 28, 2011) (citing 24 *Del. C.* § 1701 *et seq.*). *See also* 24 *Del. C.* § 1710(a) ("The Board of Medical Licensure and Discipline has the sole authority in this State to issue certificates to practice medicine and is the State's supervisory, regulatory, and disciplinary body for the practice of medicine.").

13. *See* Am. Compl. ¶ 7.

14. *Id.* at ¶ 8.

15. *Id.*

16. *Id.* at ¶¶ 27, 41.

17. *Id.* at ¶¶ 15, 23, 27, 36, 38–39, 50.

18. *Id.* at ¶¶ 23, 27, 40.

19. *Id.* at ¶ 9.

20. *Id.* at ¶¶ 29–39, Exs. A, B.

21. *Id.* at ¶¶ 31–35, 39, Ex. C.

22. *Id.* at ¶ 36.

23. *Id.*

24. *See id.* at Exs. A, B ("Since [Dr. Bradley] has been in his own practice, [ ] there has been a noticeable deterioration in Dr. Brad-

ters should be handled by the Board.[25] Yet it is alleged that Drs. Tavani and Marvel failed to report any of the information about Dr. Bradley (derived from Ms. Barnes' reports or otherwise) to the Board or any other authority.[26]

Defendant, John J. Ludwicki, M.D. ("Dr. Ludwicki"),[27] is a Delaware physician and member of the Medical Society who worked within Beebe's pediatric department with Dr. Bradley "for a period of time."[28] He shared office space with Dr. Bradley for seven months.[29] Dr. Ludwicki also shared on-call duties with Dr. Bradley at Beebe,[30] had hospital privileges at

Beebe, and "referred his patients to Bradley when he was unavailable."[31] In March or April 2005, Dr. Ludwicki and his PAC staff were interviewed by a detective from the Milford Police Department as part of an investigation of allegations that Dr. Bradley was inappropriately touching his pediatric patients.[32] Additionally, "[o]n several occasions, parents of former Bradley patients complained to [Dr. Ludwicki's] staff" that Dr. Bradley was inappropriately touching their children.[33] In response, someone in Dr. Ludwicki's office called the police in November 2008, to obtain information about how to make a report of suspected child abuse, but nothing else

ley's ability to handle his affairs, both personal and professional."). Ms. Barnes lists "[s]mall" issues, such as Dr. Bradley's "non-completion of patient charts and billing slips," "[l]arger" issues such as his chronic overspending, and "[h]uge" issues like "lack of control of his impulses (angry outbursts at his children, history of beating his son, hitting his sister in the office, and accusations by parents of patients that he was handling their daughters with improper touching)." *Id.* Ms. Barnes states that she is "concerned that intervention be done before he explodes and further harms his family ... or the children in his practice." *Id.*

25. *Id.* at ¶ 39, Ex. C ("The physician will likely not be cooperative with any attempt to evaluate him.... It is the Committee's feeling that it will not be productive to approach the physician and that the matter would best initially be addressed by the BMP.").

26. *Id.* at ¶¶ 40–41.

27. Any reference to Dr. Ludwicki also includes Defendant, Pediatric and Adolescent Center in Lewes, Chartered ("PAC"), Dr. Ludwicki's medical practice. Class plaintiffs have alleged that PAC is legally responsible for any negligence of Dr. Ludwicki arising in the course and scope of his employment with PAC pursuant to *respondeat superior* principles.

28. Am. Compl. ¶¶ 12, 19, 48.

29. Am. Compl. ¶¶ 12, 19, 48; Plaintiffs' Answering Brief in Opposition to the Ludwicki Defendants' Motion to Dismiss ("Pls.' Opp. to Ludwicki") at 6, 9, D.I. 37550408 (May 12, 2011) (citing the deposition transcript of John J. Ludwicki, M.D. ("Ludwicki Dep." at 13, 55)). When the Court refers to materials outside of the amended complaint, it does so solely to state the factual allegations the Court will consider later in this opinion when determining whether to grant leave to amend the complaint and the extent to which amendments would or would not be futile. *See* Del.Super. Ct. Civ. R. 15; *Dickens v. Costello,* 2002 WL 1463106, at *2 (Del.Super. June 27, 2002) (denying plaintiff's motion to amend based on the court's determination that the proffered claims would not be legally viable upon re-filing). The Court will not consider or rely upon any extraneous matters in deciding the Rule 12(b)(6) motions. *See* section IV. *infra* (discussing the applicable standard of review).

30. Am. Compl. ¶ 48; Pls.' Opp. to Ludwicki at 6 (citing Ludwicki Dep. at 9–11).

31. Am. Compl. ¶¶ 48, 103.

32. Pls.' Opp. to Ludwicki at 10–11 (citing the deposition transcript of Kelly S. Phillips, R.N. ("Phillips Dep.") at 27; Ludwicki Dep. at 153–55).

33. Am. Compl. at ¶ 45; Pls.' Opp. to Ludwicki at 12–14 (citing Ludwicki Dep. at 107–08; Phillips Dep. at 30–43).

was done.[34] As a result of Dr. Ludwicki's relationships with Beebe and reports from former patients of Dr. Bradley, it is alleged that he had "knowledge of Bradley's pedophilia."[35] Dr. Ludwicki did not report that information to the Board or any other authority.[36]

Defendants, Lowell F. Scott, Jr., M.D. ("Dr. Scott")[37] and Nicholas Berg, M.D. ("Dr. Berg"), are Delaware physicians who were members of the Medical Society and had hospital privileges at Beebe at times relevant to class plaintiffs' claims. From 1998 through 2000, Drs. Scott, Berg and Bradley were employees of the same private medical practice, Bayside Health Association.[38] Dr. Scott and Dr. Bradley were the only two pediatric physicians employed by Bayside but practiced in separate offices.[39] On occasion, when one or the other doctor was unavailable, they "would see each other's patients."[40] Dr. Berg was an ear, nose and throat specialist at Bayside but sometimes would treat patients who were also being treated by Dr. Bradley.[41]

[REDACTED]

[REDACTED] Indeed, Dr. Scott had described Dr. Bradley as a "pedophile" to other physicians as early as 2001.[42] Neither Dr. Berg nor Dr. Scott reported their knowledge or reasonable suspicions of Dr. Bradley's misconduct to the Board or any other authority.[43]

Class plaintiffs allege that as a direct and proximate result of each defendants' failure to report Dr. Bradley's unprofessional and/or abusive conduct to appropriate authorities, "an estimated hundreds of Bradley's patients and their parents suffered damage."[44] They seek compensatory damages from each defendant jointly and severally and exemplary damages.

### III.

All defendants except Beebe have moved to dismiss the Amended Complaint. In each motion, the defendants raise three common arguments: (1) they cannot be held liable for the tortious acts of Dr. Bradley because they never entered into any legally significant "special relationship" with Dr. Bradley or his patients that would trigger a duty to control Dr. Bradley's conduct or protect his patients within

34. Pls.' Opp. to Ludwicki at 14 (citing Phillips Dep. at 42–43).

35. Am. Compl. at ¶¶ 46, 48.

36. *Id.* at ¶¶ 23, 49.

37. Any reference to Dr. Scott also includes Defendant, Lowell F. Scott, M.D., P.A., Dr. Scott's medical practice. Class plaintiffs have alleged that Scott, P.A. is legally responsible for any negligence of Dr. Scott arising in the course and scope of his employment with the medical practice pursuant to *respondeat superior* principles.

38. Am. Compl. ¶¶ 103, 111; Plaintiffs' Opposition to Defendant Berg's Motion to Dismiss ("Pls.' Opp. to Berg") at ¶ 4, D.I. 39756117 (Sept. 12, 2011) (citing the deposition transcript of Nicholas Berg, M.D. ("Berg Dep." at 11, 17, 20 (Ex. A))).

39. Defendant Lowell F. Scott, JR., M.D.'s Motion to Dismiss at ¶ 5, D.I. 38480739 (July 1, 2011) (citing the deposition transcript of Lowell F. Scott, Jr., M.D. ("Scott Dep.") at 11–12).

40. Plaintiffs' Opposition to Defendant Scott's Motion to Dismiss ("Pls.' Opp. to Scott") at ¶ 4, D.I. 39755063 (Sept. 12, 2011) (citing Scott Dep. at 11–12).

41. Pls.' Opp. to Berg at ¶ 4 (citing Berg Dep. at 12, 20–21, 36–39).

42. *Id.* at ¶ 46.

43. *Id.* at ¶¶ 23, 26, 49.

44. *Id.* at ¶¶ 4, 64.

the legal framework of the Restatement (Second) of Torts ("Restatement Second") §§ 314, 314A, 315 and/or 319; (2) they cannot be held liable for the tortious acts of Dr. Bradley because they never undertook to render services to Dr. Bradley or his patients as would be required to trigger a duty to perform those services with reasonable care under Restatement Second § 323; and (3) they cannot be held liable under Delaware's medical negligence statute because they never undertook to render health care or professional services to Dr. Bradley or his patients.[45] In addition, each moving defendant notes that this Court has already ruled that there is no private right of action or negligence *per se* that arises under the mandatory reporting provisions of either the Medical Practice Act ("MPA")[46] or the Child Abuse Prevention Act ("CAPA"),[47] and they urge the Court not to allow class plaintiffs to reargue that holding in response to the motions *sub judice*.[48]

Well after the motions had been submitted for decision, the Court stumbled upon Restatement Second § 324A, a section entitled "Liability to Third Person for Negligent Performance of Undertaking."[49] The Court inquired specifically of class plaintiffs, the Medical Society and Drs. Marvel and Tavani ("the Medical Society defendants") whether class plaintiffs' allegations regarding Ms. Barnes' communications with Drs. Marvel and Tavani might trigger a duty running from them to Dr. Bradley's patients under Restatement Second § 324A. In supplemental briefing, the Medical Society defendants argue that the amended complaint fails to state a claim under § 324A because it fails to allege that: (1) they undertook to render services to Ms. Barnes in response to her communications; (2) their failure to perform the undertaking increased the risk of harm to class plaintiffs; or (3) Ms. Barnes reasonably relied upon the undertaking.

In each of their responses, class plaintiffs reiterate that: (1) each defendant's unique relationship with Dr. Bradley or his patients, when considered against the backdrop of the MPA and the CAPA, was of a nature that would trigger a common law duty under Restatement Second §§ 314, 314A, 315 and 319 to report Dr. Bradley's misconduct to appropriate authorities; (2) the facts as plead in the

45. *See* 18 *Del. C.* § 6801.

46. *See* 24 *Del. C.* § 1731A (making it "an affirmative duty" for persons certified to practice medicine, licensed healthcare providers, the Medical Society, and all healthcare institutions and agencies in the State to report: "information ... [that] indicates that a person certified and registered to practice medicine in this State is or may be guilty of unprofessional conduct or may be unable to practice medicine with reasonable skill or safety to patients by reason of mental illness or mental incompetence; physical illness ... or excessive use or abuse of drugs, including alcohol").

47. *See* 16 *Del. C.* § 903 ("Any person, agency, organization or entity who knows or in good faith suspects child abuse or neglect shall make a report in accordance with § 904 of this title [to the Department of Services for Children]. For purposes of this section, "person" shall include ... any physician, any other person in the healing arts including any person licensed to render services in medicine, osteopathy or dentistry, any intern, resident, nurse, school employee, social worker, psychologist, medical examiner, hospital, health care institution, the Medical Society of Delaware or law-enforcement agency.").

48. *See Doe v. Bradley*, 2011 WL 290829, at *17 (Del.Super. Jan. 21, 2011) (*"Bradley I "*) ("[T]he Court must conclude that neither the MPA nor the CAPA create a private right of action for the benefit of those who allege to have been injured by a failure to report unprofessional physician conduct or known or suspected child abuse.").

49. RESTATEMENT (SECOND) TORTS § 324A.

amended complaint sufficiently detail actions taken by each defendant from which one reasonably can infer a voluntary undertaking by each defendant pursuant to Restatement Second § 323 to perform services for the protection of Dr. Bradley's patients; and (3) reporting professional misconduct is a health care or professional service required of all health care providers, including defendants, as licensed members of the medical profession and pursuant to the By–Laws of the Medical Society, the Principles of Medical Ethics of the American Medical Association and the MPA and CAPA and, as such, the failure to report implicates Delaware's Medical Negligence Statute. They also argue that the Medical Society defendants' communications with Ms. Barnes constitute an undertaking to provide services to her for the benefit and protection of Dr. Bradley's patients, thereby triggering a duty to Dr. Bradley's patients under Restatement Second § 324A.

## IV.

■■■ All of the defendants have moved to dismiss under Delaware Superior Court Rule of Civil Procedure 12(b)(6). When considering a motion to dismiss, the Court must read the complaint generously, accept all of the well-plead allegations contained therein as true, and draw all reasonable inferences in a light most favorable to the non-moving party.[50] A complaint is well-plead if it puts the opposing party on notice of the claim being brought against it.[51] "Dismissal is inappropriate unless the 'plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.'"[52] When the complaint includes claims of negligence, the Court must also take into account Delaware Superior Court Civil Rule 9(b), which requires the plaintiff to plead allegations of negligence with particularity.[53] The underlying purpose of Rule 9(b) is to ensure that the defendant is notified of the "acts or omissions by which it is alleged that a duty has been violated in order to enable the preparation of a defense."[54] "To satisfy this purpose, 'it is usually necessary to allege only sufficient facts out of which a duty is implied and a general averment of failure to discharge that duty.'"[55]

■■■ Generally, the "universe of facts" considered in a motion to dismiss are those plead within the confines of the complaint.[56] Rule 12(b) contemplates, however, that parties may submit "matters outside the pleading" when presenting or opposing a motion to dismiss.[57]

**50.** *In re Gen. Motors (Hughes) S'holder Litig.,* 897 A.2d 162, 168 (Del.2006); *Lagrone v. Am. Mortell Corp.,* 2008 WL 4152677, at *4 (Del.Super.Sept.4, 2008).

**51.** *Lagrone,* 2008 WL 4152677, at *4 (citing *Precision Air v. Standard Chlorine of Del.,* 654 A.2d 403, 406 (Del.1995)).

**52.** *In re Gen. Motors (Hughes) S'holder Litig.,* 897 A.2d at 168 (quoting *Savor, Inc. v. FMR Corp.,* 812 A.2d 894, 896–97 (Del.2002)). *See also Cent. Mortgage Co. v. Morgan Stanley Mortgage Capital Holdings LLC,* 27 A.3d 531, 535 (Del.2011).

**53.** Del.Super. Ct. Civ. R. .9(b). *See, e.g., Browne v. Robb,* 583 A.2d 949, 953 (Del.1990)

("It is insufficient to merely make a general statement of the facts which admits of almost any proof to sustain it.") (internal quotation omitted).

**54.** *State Farm Fire & Cas., Co. v. Gen. Elec. Co.,* 2009 WL 5177156, at *5 (Del.Super. Dec. 1, 2009) (internal quotation omitted).

**55.** *Id.* (quoting *Riggs Nat'l Bank v. Boyd,* 2000 WL 303308, at *3 (Del.Super. Feb. 23, 2000)).

**56.** *See Malpiede v. Townson,* 780 A.2d 1075, 1082 (Del.2001).

**57.** Del.Super. Ct. Civ. R. 12(b).

When such extraneous matters are considered by the Court in deciding the motion, "the motion shall be treated as one for summary judgment" under Rule 56.[58] In connection with the motions *sub judice*, the parties have included matters extraneous to the amended complaint in support of and/or opposition to the motions. Accordingly, the Court must determine whether the motions to dismiss may be adjudicated as styled or whether they must be adjudicated under the summary judgment standard of review.

 Delaware courts follow the federal practice when determining whether the presentation of matters outside of the pleadings will convert a motion to dismiss to a motion for summary judgment.[59] This practice allows the trial court full discretion to accept and consider extraneous submissions when adjudicating a motion to dismiss under Rule 12(b)(6), thereby requiring conversion of the motion, or to reject the extraneous submissions in order to preserve the motion to dismiss under

Rule 12(b)(6).[60] To assist in the proper exercise of this discretion, our Supreme Court has recognized limited instances where the consideration of extraneous matters will not require conversion of the motion to dismiss: "(i) where an extrinsic document is integral to a plaintiff's claim and is incorporated into the complaint by reference, and (ii) where the document is not being relied upon to prove the truth of its contents."[61] Additionally, the trial court may take judicial notice of matters that are not subject to reasonable dispute.[62]

The extraneous matters presented to this Court include five documents attached as exhibits to the amended complaint,[63] as well as a multitude of references made in oral argument and in briefing by both parties to various deposition transcripts, [REDACTED] and two memos written by staff members of Dr. Ludwicki's medical practice.[64] As to the documents that were attached to and incorporated within the amended complaint, the Court does not view those documents as "extraneous" and

---

**58.** *Id. See also* Del.Super. Ct. Civ. R. 56.

**59.** *See, e.g., In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 69 (Del.1995) (following the federal practice in determining what extraneous documents may properly be considered under Rule 12(b)(6)).

**60.** *See* 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 (3d ed. 2011) ("As the language of the rule suggests, federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."). *See also In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d at 168 ("[I]f a party presents documents in support of its Rule 12(b)(6) motion to dismiss *and the trial court considers the documents*, it generally must treat the motion as one for summary judgment.") (emphasis supplied).

**61.** *Furman v. Del. Dep't of Transp.*, 30 A.3d 771, 774 (Del.2011).

**62.** *See In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d at 169; Del. R. Evid. 201(b).

**63.** Here, class plaintiffs have incorporated by reference into the amended complaint two versions of a letter from Ms. Barnes to the Medical Society, PHC meeting minutes, a letter from Dr. Bradley's practice partner, Melvin L. Morse, M.D., to multiple recipients, and a generic excerpt from the Delaware application for a renewal of a medical license. *See* Am. Compl. at Exs. A–E.

**64.** It has generally been recognized that "[e]ither the pleader or the moving party or both may bring the conversion provision into operation by submitting matter that is outside the challenged pleading." *J.L. v. Barnes*, 2011 WL 3300702, at *4 (Del.Super. Aug. 3, 2011) (citing 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 (3d ed.2011)).

will consider them within the Rule 12(b)(6) standard of review.[65] Beyond those documents, however, the Court has determined that it is not appropriate at this stage of the litigation to consider the extraneous matters relied upon by the parties when the central question raised by each of the motions is whether class plaintiffs have stated viable tort claims in their amended complaint as a matter of law. The Court must resolve this threshold issue before turning to the question of whether, under Rule 56, class plaintiffs can sustain their well-plead tort claims with competent evidence. Thus, to the extent class plaintiffs have attempted to bolster their pleading with factual matters not actually contained within the amended complaint (many of which were referred to for the first time at oral argument), the Court will not consider these extraneous facts when addressing the motions to dismiss. To do otherwise would be to allow class plaintiffs to avoid their obligation to plead sufficient facts to state a cause of action.

 Likewise, the Court will not consider the extraneous facts relied upon by the moving defendants to contest the facts plead by class plaintiffs in the amended complaint. While it is true that the Court need not accept conclusory assertions as true when deciding a motion to dismiss, the Court will not adjudicate contested issues of fact on a motion to dismiss, nor will it deem a pleading inadequate under Rule 12(b)(6) simply because a defendant presents facts that appear to contradict those plead by the plaintiff.[66] The Court's treatment of the extraneous matters submitted by the parties here comports with the main objective of motion practice under Rule 12(b)(6) which is to "test the sufficiency of the allegations" contained in the complaint.[67]

Having determined that it will not consider the extraneous matters when deciding the motions to dismiss, the Court still must determine whether the additional facts should be ignored altogether or whether some proper purpose may be served by taking notice of those facts that class plaintiffs have not plead within their amended complaint, but have offered in support of their argument that there are factual bases for their claims. After carefully considering the matter, and with the benefit of the parties' supplemental submissions on this issue, the Court has determined that it is appropriate to consider the extraneous matters in deciding whether to grant class plaintiffs further leave to amend their complaint.

 The Court begins by noting that each party, except for the Medical Society defendants,[68] agrees that a court deciding a Rule 12(b)(6) motion may consider the extraneous evidence presented to the Court in order to perform the futility analysis required by Superior Court Civil Rule 15.[69] Under Rule 15(a), a party may amend a pleading "by leave of court or by

---

65. *Lagrone*, 2008 WL 4152677, at *4.

66. *See, e.g., Malpiede v. Townson*, 780 A.2d at 1082 (explaining that a motion to dismiss must be "decided without the benefit of a factual record" and thus, a court "may not resolve material factual disputes"). *See also In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d at 168 ("[A]ll well-pleaded factual allegations are accepted as true. . . .").

67. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993).

68. As discussed below, the Medical Society defendants will not be affected by the Court's futility analysis and, therefore, were not asked to provide supplemental briefing on this issue.

69. *See* Plaintiffs' Memorandum of Law in Response to the Court's Letter of November 15, 2011 at 2, D.I. 41194929 (Dec. 2, 2011) ("The Court is not required to convert the motions, but is permitted to consider the extraneous facts when performing a futility analysis."); Supplemental Memorandum of Law in Support of the Ludwicki Defendants' Motion to

written consent of the adverse party ... when justice so requires." [70] Rule 15 "is designed to implement the modern philosophy that cases are to be tried on their merits, not on the pleadings." [71] In keeping with this philosophy, Rule 15 provides the Court with liberal discretion to grant amendments. [72] A motion to amend will not be granted, however, if the amendment would be futile. [73] An amendment is futile if it clearly would not survive a motion to dismiss. [74]

■■■■■ When making a futility determination based on a proposed amendment, the court accepts as true all of the well-plead facts presented therein. [75] In addition, Delaware courts have considered representations from the parties, as well as potential hypothetical fact patterns, in determining whether a party will be granted leave to amend a dismissed claim. [76] Accordingly, in order to accommodate a "just,

speedy and inexpensive determination" of what already forebodes to be a complex series of claims, [77] the Court agrees with the parties that consideration of the extraneous facts for the sole purpose of determining the futility of amendment is prudent at this point in the litigation.

For the reasons discussed below, the Court has determined that class plaintiffs have failed to state a claim of nonfeasance against the Medical Society defendants, and that any amendment in which class plaintiffs might again attempt to state such claims would be futile. With regard to Drs. Berg, Scott and Ludwicki, the Court has determined that the amended complaint fails to state viable claims against each of these defendants and that the claims, as plead, must therefore be dismissed. The extraneous facts submitted by the parties, however, suggest that at least some of the class plaintiffs may be

Dismiss at ¶ 5, D.I. 41199540 (Dec. 2, 2011) ("[T]here is nothing in the Rules that prohibits the Court, after ruling on a motion to dismiss without consideration of the extraneous materials, to then consider such material for the sole purpose of deciding whether it would be futile to grant an additional period of leave to amend Plaintiffs' Complaint."); Defendant Berg's Memorandum of Law in Support of Berg's Motion to Dismiss at ¶ 3, D.I. 41207990 (Dec. 2, 2011) ("In Berg's case, this Court has identified the carefully limited, and indeed, 'sole purpose [for considering matters outside the Complaint] of determining whether leave to amend the complaint to allege additional facts against the remaining defendants, as reflected in the extraneous materials, should be granted."); Legal Memorandum in Support of Scott Defendants' Motion to Dismiss at 1, D.I. 41199489 (Dec. 2, 2011) ("Scott does not believe the Court must convert the Motion before it may consider the extraneous materials now upon the record of this case, for purposes of deciding in favor of Scott on the pending Motion to Dismiss, i.e. that another amendment of the Complaint would be futile.").

**70.** Del.Super. Ct. Civ. R. 15(a).

**71.** *Cartanza v. Lebeau*, 2006 WL 4804647, at *2 (Del.Ch. Apr. 3, 2006).

**72.** *Id.*

**73.** *Id.* at *3 (citing *Zimmerman v. Braddock*, 2005 WL 2266566, at *6 (Del.Ch. Sept. 8, 2005)).

**74.** *Id.*

**75.** *Id.*

**76.** *See, e.g., Smith v. Horizon Lines, Inc.*, 2009 WL 2913887, at *3 (Del.Ch. Aug. 31, 2009) (giving plaintiff an additional thirty days before effective dismissal without prejudice, to file the necessary documents based on plaintiff's insistence that he can amend his complaint appropriately); *Enigma Info. Retrieval Sys., Inc. v. Radian*, 2005 WL 445568, at *3 (Del.Super.Feb. 23, 2005) (dismissing plaintiff's claims without prejudice and giving leave to amend based on facts suggesting a different potential claim existed "albeit fraught with potential shortcomings").

**77.** Del.Super. Ct. Civ. R. 1.

able to state viable claims of medical negligence and/or common law negligence against these defendants upon further amendment of their complaint. Accordingly, leave to amend the complaint as to these plaintiffs and defendants will be granted.

### V.

 To prevail on a negligence claim, a plaintiff must prove that: a defendant owed her a duty of care; the defendant breached that duty; and the breach proximately caused an injury.[78] In their motions, each defendant has raised the threshold question of whether they owed a legal duty to class plaintiffs. Within the common law, "[d]uty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person. . . ."[79] When the relationship between the parties is such that the law should recognize that one party must act for the benefit of another, the common law will impose a legal duty upon that party to do so in a reasonable manner.[80] Whether the

defendants owed class plaintiffs a legal duty is a question of law to be determined by the Court.[81]

Class plaintiffs have had two chances to state viable claims against the Medical Society defendants so it is appropriate to address their motion to dismiss first. Next, the Court will consider the claims against the remaining defendants, the so-called "individual defendants," and Dr. Marvel in his capacity as a Beebe staff physician.

### A. The Claims Against The Medical Society Defendants

### 1. The Nonfeasance Claims Under Restatement Second § 315

 As explained in *Bradley I*, "[g]enerally, to determine whether one party owed another a duty of care, [Delaware courts] follow the guidance of the Restatement (Second) of Torts."[82] The Restatement Second distinguishes malfeasance or misfeasance (a negligent act) from nonfeasance (a negligent omission).[83] In *Price* and *Riedel*, our Supreme Court succinctly explained the legal distinction as follows:

**78.** *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del.2011).

**79.** *Id.* (citations omitted).

**80.** W. PAGE KEETON ET AL., PROSSER & KEETON ON TORTS § 53 (Keeton ed., 5th ed.1984) (hereinafter "PROSSER & KEETON ON TORTS"); 57A AM. JUR.2D NEGLIGENCE § 81 (2d ed.2004). *See also* RESTATEMENT (SECOND) TORTS § 4 ("The word 'duty' is used throughout [this] Restatement [ ] to denote the fact that the actor is required to conduct himself in a particular manner at the risk that if he does not do so he becomes subject to liability to another to whom the duty is owed for any injury sustained by such other, of which that actor's conduct is the legal cause.").

**81.** *Kuczynski v. McLaughlin*, 835 A.2d 150, 153 (Del.Super.2003); *Riedel*, 968 A.2d at 20.

**82.** *Riedel*, 968 A.2d at 22. The Court reaffirms, and will not address further without

guidance from the Supreme Court, its decision to confine the duty analysis to the Restatement Second based on the rejection in *Riedel* of the "concept of duty" expressed in the Restatement (Third) of Torts (hereinafter "Restatement Third"). *See Bradley I*, 2011 WL 290829, at *7; *Price*, 26 A.3d at 167 n. 9 (analyzing the plaintiff's duty claim under the Restatement Second and noting that the Court rejected the Restatement Third in *Riedel*).

**83.** *See, e.g.*, RESTATEMENT (SECOND) TORTS §§ 314, 284, 302. *See also Radosevic v. Va. Int. College*, 651 F.Supp. 1037, 1040 n. 6 (W.D.Va.1987) (noting that:

The lines between malfeasance, misfeasance and nonfeasance are indistinct and, consequently, confusing at best. "Malfeasance" is the doing of an act which a person ought not to do at all; "misfeasance" is the improper doing of an act which a per-

In the case of misfeasance, the party who does an affirmative act owes a general duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the [affirmative] act. But, in the case of nonfeasance, the party who merely omits to act owes no general duty to others unless there is a special relation between the actor and the other which gives rise to a duty.[84] The "no duty to act" rule, expressed in Restatement Second § 314, is not abated by either the gravity of the risk of harm confronting the "other" or the defendant's awareness of that risk. As our Supreme Court stated in *Riedel,* "[t]he fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not itself impose upon him a duty to take such action." [85] These tenets, reflecting the common law's very different treatment of malfeasance/misfeasance and nonfeasance claims, have deep roots in sound public policy and settled legal doctrine.[86]

In their original complaint, class plaintiffs' claims against the Medical Society defendants rested upon allegations that these defendants had information and reports of unprofessional conduct and suspected abuse against children perpetrated by Dr. Bradley yet failed to report that information to the Board or other appropriate authorities.[87] In *Bradley I,* the Court determined that these claims amounted to claims of nonfeasance.[88] The amended complaint provides more detail regarding what the Medical Society defendants knew of Dr. Bradley's misconduct and how/when they knew it but, in the end, the amended pleading raises essentially identical claims of nonfeasance against the Medical Society defendants as those raised in the original complaint.[89] As to these claims,[90] class plaintiffs concede that they must fit their factual allegations within the "special relationship" rubric as defined within the Restatement Second.[91]

The Restatement Second has codified exceptions to, and so-called "special applications" of, the general "no duty to act" rule in §§ 314A and 315 through 319.[92] When a claim of negligence arises from a defendant's alleged failure to take steps to protect the plaintiff from harm caused by a third person, as is the case here, § 315 serves as the hub of the duty

son might lawfully do; and "nonfeasance" is the omission of an act which a person ought to do.) (internal quotations and citations omitted).

84. *Price,* 26 A.3d at 167 (quoting RESTATEMENT (SECOND) TORTS § 302 cmt. a) (internal quotations and citations omitted); *Riedel,* 968 A.2d at 22.

85. *Riedel,* 968 A.2d at 22 (citing RESTATEMENT (SECOND) TORTS § 314).

86. *See Bradley I,* 2011 WL 290829, at *5 (providing historical background and bases for the general "no duty to act" rule).

87. *Id.* at *4.

88. *Id.* at *6.

89. *See, e.g.,* Am. Compl. ¶¶ 40, 42, 96–101.

90. Class plaintiffs also present new allegations of misfeasance (a failure reasonably to perform their assumption of affirmative duties to protect class plaintiffs) and medical negligence (a failure to discharge their duty to provide competent medical care to Dr. Bradley's patients). The Court will address these claims separately below.

91. *See* Plaintiffs' Answering Brief in Opposition to the Medical Society Defendants' Motion to Dismiss ("Pls.' Opp. to Medical Society") at 15–22, D.I. 37295997 (Apr. 28, 2011).

92. *See Riedel,* 968 A.2d at 22 (citing RESTATEMENT (SECOND) TORTS §§ 314A, 316–324A). A legal duty to act may also be created by a statute enacted to protect the class of persons within which plaintiff falls. *Friedel v. Osunkoya,* 994 A.2d 746, 756 (Del.Super.2010). To the extent this issue has been re-argued in the

analysis in that it directs the court through the other applicable provisions of the Restatement Second.[93] As explained in *Bradley I*, the "special application" of the "no duty to act rule" arises in cases where "special relationships ... exist between the defendant and either the person who is the source of the danger or the person who is foreseeably placed at risk by the danger."[94] As applied here, Restatement Second § 315 requires class plaintiffs to plead facts that would allow the Court to conclude that a "special relationship" exists between either the Medical Society defendants and Dr. Bradley (§ 315(a)), or the Medical Society defendants and Dr. Bradley's patients (§ 315(b)).[95]

**a. Class Plaintiffs Have Not Plead Facts To Justify The Imposition of a Duty Upon the Medical Society Defendants Under Restatement Second § 315(a)**

Section 315(a) directs the Court to consider the relationship between the Medical Society defendants ("the actor") and Dr. Bradley ("the third person") with reference to §§ 316–319, each of which define the only relationships that will trigger a duty to act for the protection of another.[96] Section 319, the only provision that might apply here,[97] states: "[o]ne who *takes charge* of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."[98] The phrase "takes charge" contemplates situations in which the defendant is alleged to have exercised custodial control over the "third person," as exemplified in the two illustrations provided for § 319 and by the Delaware decisions that have considered § 319 as a basis to impose a duty upon the defendant.[99]

▮▮▮ In their amended complaint, class plaintiffs allege very broadly that the Medical Society defendants had a "special rela-

---

briefing on the motions *sub judice*, the Court re-affirms its prior decision that class plaintiffs have failed to state a viable claim of negligence *per se* and will not revisit that argument in this opinion. *See Bradley I*, 2011 WL 290829, at *16–17 (rejecting class plaintiffs' argument that a claim of negligence *per se* is viable under the MPA or CAPA).

93. RESTATEMENT (SECOND) TORTS § 315 cmts. a-c (referring to the "special relationships" described in Restatement Second §§ 314 and 316 through 319).

94. *See Bradley I*, 2011 WL 290829, at *6 (citing *Riedel*, 968 A.2d at 22–23).

95. RESTATEMENT (SECOND) TORTS § 315 provides: "There is no duty to control the conduct of a third person as to prevent him from causing physical harm to another unless: (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection."

96. *See* RESTATEMENT (SECOND) TORTS § 315 cmt. c. The comments to §§ 315(a) and 316–319 indicate that these are the only relationships between actor and third person that will trigger a duty to act.

97. The parties agree that § 316 ("Duty of Parent to Control Conduct of Child"), § 317 ("Duty of Master to Control Conduct of Servant"), and § 318 ("Duty of Possessor of Land or Chattels to Control Conduct of Licensee") are inapplicable.

98. RESTATEMENT (SECOND) TORTS § 319 (emphasis supplied).

99. *See Furek v. Univ. of Del.*, 594 A.2d 506, 519 (Del.1991) ("The 'custody' envisioned by § 319 finds application in situations involving close physical control such as occurs in hospital settings."); *Shively v. Ken Crest Centers for Excep. Pers.*, 2001 WL 209910, at *6 (Del.Super. Jan. 26, 2001) (finding that Ken Crest was in a unique position because it had the ability to "coordinate mental health treatment" and "enforce more stringent superviso-

tionship" with Dr. Bradley individually and through the PHC,[100] and then plead a host of facts they contend are reflective of this "special relationship," [101] including that: (1) Ms. Barnes directed her complaint regarding her brother to Dr. Tavani; (2) the Medical Society defendants accepted and investigated Ms. Barnes's complaint; (3) they assured her that the concerns would be addressed; and (4) they then did nothing in response to the complaint.[102] None of the facts alleged by class plaintiffs suggest that the Medical Society defendants exercised any type of custodial control over Dr. Bradley, or that they maintained a relationship with him that would have allowed them to do so. To the extent such authority to control another physician exists, it does not rest with the Medical Society.[103] Consequently, class plaintiffs have failed to state a claim against the Medical Society defendants under Restatement Second § 319 and, more broadly, § 315(a).

### b. Class Plaintiffs Have Not Plead Facts To Justify the Imposition of a Duty Upon the Medical Society Defendants Under Restatement Second § 315(b)

Section 315(b) directs the Court to consider the relationship between the Medical Society defendants ("the actor") and Dr. Bradley's patients ("the other[s]") as further defined in §§ 314A and 320.[104] Section 320 does not apply to this case because it defines the "Duty of [a] Person Having Custody of Another to Control Conduct of Third Persons" [105] and class plaintiffs have not alleged or argued that the Medical Society defendants ever had "custody of" any of Dr. Bradley's patients. Likewise, § 314A lists several "special relationships" which do not apply to this case.[106]

■■■■ Unlike the comment to § 315(a), however, which directs the Court to consider only §§ 316–319 when determining whether the requisite "special relationship" exists to trigger a duty under § 315(a), a *"Caveat"* to § 314A provides that "[t]he Institute expresses no opinion as to whether there may not be other relations [similar to those expressly recognized in this Section] which impose a similar duty." [107] This *"Caveat"* clearly allows

---

ry measures" for *its residents*, and to remove *residents* "from the facility in its discretion"); RESTATEMENT (SECOND) TORTS § 319 illus. 1 & 2 (using a private hospital and a sanitarium as examples of situations in which § 319 applies).

**100.** Am. Compl. ¶ 97.

**101.** *See id.* ¶ 99(a)-(e).

**102.** *Id.* Class plaintiffs more explicitly allege in their response that: "[b]y way of their [Medical Society's] own By–Laws, assurances to Barnes, and discussion and subsequent determinations regarding Barnes' report at the November 2004 meeting of the Physicians' Health Committee, the Medical Society Defendants 'took charge' over Bradley." Pls. Opp. to Med. Society at 21.

**103.** *See* 24 *Del. C.* § 1710(a) (giving the Board the sole authority to discipline certified persons in the practice of medicine).

**104.** RESTATEMENT (SECOND) TORTS § 315 cmt. c.

**105.** RESTATEMENT (SECOND) TORTS § 320.

**106.** *See* RESTATEMENT (SECOND) TORTS § 314A (listing: common carrier/passenger, innkeeper/guest, possessor of land/invited public, and one who takes custody of another).

**107.** RESTATEMENT (SECOND) TORTS § 314A caveat. *See also* RESTATEMENT (SECOND) TORTS § 314A cmt. b ("The relations listed are not intended to be exclusive, and are not necessarily the only ones in which a duty of affirmative action for the aid or protection of another may be found.").

the Court, within its discretion, to envisage "special relationships" outside the bounds of the Restatement Second and to consider whether such relationships give rise to a legal duty that may be imposed upon the Medical Society defendants to act for the protection of class plaintiffs. Although not clearly plead in the amended complaint, to the extent class plaintiffs allege that the Medical Society defendants maintained a special relationship with Dr. Bradley's patients by virtue of their membership in a professional trade organization, the purpose of which is to "enhance the quality of public health," [108] their participation in the PHC, or their receipt of information from Ms. Barnes regarding Dr. Bradley's improper contact with his patients, the Court is satisfied that none of these circumstances give rise to the sort of special relationship that is contemplated by Restatement Second §§ 314A or 315(b). More specifically, none of these roles of the Medical Society defendants put them in a "relation of dependence or of mutual dependence" with Dr. Bradley's patients as is necessary to trigger a duty to act for their protection.[109]

 In addition to relations that might arise from the Medical Society defendants' various roles and activities within the organization, class plaintiffs have also argued that the Medical Society defendants' status as statutorily mandated reporters of suspected child abuse creates a "special rela-

tionship" between them, as reporters, and Dr. Bradley's patients, the putative beneficiaries of the reports that allegedly should have been, but were not, made. In *Bradley I*, this Court held that a violation of the MPA or CAPA, alone, would not support the imposition of a common law duty of care upon the Medical Society defendants when the statutes could not form the basis of a claim of negligence *per se*.[110] Class plaintiffs, in an effort to circumvent the Court's earlier holding, propose in their response to the Medical Society defendants' motion to dismiss that the Court recognize a "special relationship" between all physicians and potential victims of abuse, *even if* not otherwise recognized at common law, based on the General Assembly's decision to include physicians as mandatory reporters in the MPA and CAPA.[111] Class plaintiffs urge the Court to find: (1) that the language in the statutes reflects the General Assembly's acknowledgment of a "special relationship" between Delaware physicians and the victims of child abuse; and (2) that such a "special relationship," along with the circumstances surrounding these defendants' knowledge of Dr. Bradley's conduct, creates a new tort duty not previously recognized at common law.[112]

Mark Twain once cleverly observed in *A Connecticut Yankee in King Arthur's Court*, when describing a companion of the

---

108. Am. Compl. ¶ 7.

109. RESTATEMENT (SECOND) TORTS § 314A cmt. b.

110. *Bradley I*, 2011 WL 290829, at *9.

111. *See, e.g.*, Am. Compl. ¶¶ 59–64, 97, 100, 103, 104, 112. Pls.' Opp. to Med. Society at 17 ("The Medical Society Defendants' special relationship with Bradley ... is premised on a myriad of facts.... Specifically, the Medical Society Defendants: ... Are statutorily-mandated by Delaware's Medical Practice Act to

report physicians guilty of unprofessional conduct ... to the Board of Medical Practice.") (citing non-Delaware case law for support). *See also id.* at 22 ("[T]he Child Abuse Prevention Act specifically names the Medical Society as an entity required to report child abuse or neglect.... The implication from being singled out ... is that the [Medical Society Defendants] are in an extraordinary position to notice and report child abuse.").

112. *See id.*

protagonist: "She was wise, subtle, and knew more than one way to skin a cat."[113] Not so here (at least as to the latter observation). Despite class plaintiffs' effort to recast their statutory duty argument as a new § 315(b) argument, it is clear that class plaintiffs have offered no new legal basis upon which the Court could recognize a heretofore nonexistent common law duty based on the alleged violation of a statute.[114] Since there evidently is some confusion regarding the Court's holding on this issue in *Bradley I,* the Court will endeavor to explain the holding again here.

In *Bradley I,* this Court held that "the statutory obligation to report [suspected child abuse] does not equate to a common law duty to act."[115] Here again, the Court looked to the Restatement Second for guidance in accordance with recent and very clear direction from our Supreme Court that the Restatement Second, not the Restatement Third, explicates tort duties in a manner that is most consistent with Delaware law.[116] To be sure, the

Restatement Third expressly provides that the violation of a statute may create an affirmative duty to act when the common law otherwise would not.[117] The Restatement Third also clearly acknowledges, however, that it is blazing new trails in this regard because the Restatement Second does not address the creation of new affirmative duties in tort based on statute.[118]

The applicable provision of the Restatement Second is § 874A, entitled "Tort Liability for Violation of Legislative Provision."[119] This provision allows the court to afford a "right of action" to those injured as a result of a violation of a statute, even when the statute does not expressly provide that right, in instances where, *inter alia,* the court determines that "the remedy is . . . needed to assure the effectiveness of the [statutory] provision."[120] The Restatement Third notes that § 874A is generally directed at statutes *proscribing* misfeasance, not those that *prescribe* action when none would otherwise be required.[121] Moreover, § 874A

---

**113.** Mark Twain, *A Connecticut Yankee in King Arthur's Court* (Webster & Co. 1889).

**114.** *Bradley I,* 2011 WL 290829, at *8–9.

**115.** *Id.* at *8.

**116.** *Id.* (citing *Riedel,* 968 A.2d at 22).

**117.** Restatement (Third) Torts § 38 ("When a statute requires an actor to act for the protection of another, the court may rely on the statute to decide that an affirmative duty exists and its scope.").

**118.** Restatement (Third) Torts § 38 *History* cmt. a ("No provision in the Restatement Second of Torts addressed the role of statutes in supporting the recognition of new affirmative duties in tort.").

**119.** Restatement (Second) Torts § 874A ("When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy

for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a *right of action,* using a suitable existing tort action or a new cause of action analogous to an existing tort action.") (emphasis supplied).

**120.** *Id.*

**121.** *See* Restatement (Third) Torts § 38 cmt. a ("The Restatement Second of Torts § 874A provided that statutes might play a role in the creation of new claims, but § 874A was directed to statutes that *proscribed* misfeasance.") (emphasis supplied). *See also id.* at *Reporters' Notes* cmt. a ("[M]ost courts have employed the Restatement Second of Torts § 874A to decide whether a statute *proscribing conduct* that causes harm of a type that had not been recognized previously as actionable should be the basis for expanding tort

does not speak specifically to the creation of a new duty to act but rather speaks to the creation of a "right of action," a concept that leads directly back to *Bradley I* and its extensive discussion of our Supreme Court's reluctance to legislate "rights of action" when such rights have not been recognized by our General Assembly.[122] To be clear, the Court reiterates its holding that a private right of action—which, if recognized, would be available against all statutory reporters including "nurses, school employees (including teachers), social workers, psychologists and medical examiners"[123]—simply cannot be gleaned from either the MPA or CAPA.

It is worthwhile to note that courts in other jurisdictions have recognized new affirmative tort duties based solely upon statutory language purportedly drawn from concepts set forth in the Restatement Second.[124] These courts, however, are inconsistent in their rationale—some fail to distinguish situations of negligence *per se*, where a duty under tort law previously existed, from situations where the statute would create a duty not otherwise recognized by tort common law;[125] and others fail to distinguish the adoption of a statutory standard of care from the creation of a tort duty.[126] For example, class plaintiffs cite a case from the Supreme Court of Hawaii for the proposition that statutory provisions can create an affirmative duty not otherwise recognized in the common law, but that court relies upon Restatement Second § 286 which addresses when a statute might define the applicable "standard of conduct."[127] While sometimes confused, the concept of "standard of conduct [or care]" is fundamentally different from the concept of "duty."[128] Duty ad-

---

law to encompass that harm.") (emphasis supplied).

122. *Bradley I*, 2011 WL 290829, at *14–17 (addressing in detail Delaware law regarding the recognition of a "private right of action"); *id.* at *17 (concluding the analysis by holding: "[g]iven that what plaintiffs seek here is the 'creation of a large and new field of tort liability beyond what existed at common law without clear legislative direction to do so,' the Court must conclude that neither the MPA nor the CPA create a private right of action for the benefit of those who allege to have been injured by a failure to report unprofessional physician conduct or known or suspected child abuse") (citations omitted).

123. *Id.* at *16 n. 135 (citing the MPA and CAPA).

124. *See, e.g., Mammo v. State,* 138 Ariz. 528, 675 P.2d 1347 (App.1984); *Sabia v. State,* 164 Vt. 293, 669 A.2d 1187 (1995); *Jensen v. Anderson County Dep't of Soc. Servs.,* 304 S.C. 195, 403 S.E.2d 615 (1991); *Perry v. S.N.,* 973 S.W.2d 301 (Tex.1998); *Braxton v. Commonwealth, Dep't of Transp.,* 160 Pa.Cmwlth. 32, 634 A.2d 1150 (1993); *Lee v. Corregedore,* 83 Hawai'i 154, 925 P.2d 324 (1996); *Kaho'ohanohano v. Dep't of Human Servs.,* 117 Hawai'i 262, 173 P.3d 538 (2008); *Remsburg v. Montgomery,* 376 Md. 568, 831 A.2d 18 (2003).

125. *See* RESTATEMENT (THIRD) TORTS § 38 *Reporters' Notes* cmt. d (citing *Spates v. Dameron Hosp. Assn.,* 114 Cal.App.4th 208, 7 Cal. Rptr.3d 597, 605 (2003) (examining whether a statute could be used for negligence *per se* where defendant had no common law duty to avoid negligently inflicting emotional distress)).

126. *See, e.g., Sabia v. State,* 669 A.2d at 1192 (citing Restatement Second § 286 and concluding that "it is beyond dispute that the relevant statutory provisions create a duty on the part of SRS to assist a particular class of persons to which plaintiffs belong and to prevent the type of harm suffered").

127. *Kaho'ohanohano v. Dep't of Human Servs.,* 117 Hawai'i 262, 178 P.3d 538, 567 (2008).

128. *See Kuczynski,* 835 A.2d at 153 (noting the important distinction between "standard of care" and "duty"). *See also Myers v. United States,* 17 F.3d 890, 899 (6th Cir.1994) ("The doctrine of negligence *per se* was created, not as a means of deciding when a duty of care arises, but rather as a means of defining the particular standard of conduct such a

dresses the baseline question of whether a court may impose upon a defendant a legally enforceable obligation to act for the protection of another.[129] The standard of care, on the other hand, addresses the standard by which the defendant's conduct should be measured *after* the court has determined that a duty exists.[130] This critical distinction, not recognized in *Kaho'ohanohano,* renders that decision inapposite.

The comments to the Restatement Third reflect that the body of work housed within those now-published volumes is intended to advance a new approach to torts with respect to the interaction of the common law and statutory law.[131] Whether *vel non* this new approach is needed or should be adopted here in Delaware is not for this Court to say. Until otherwise notified, this Court remains bound to follow the law as it exists in Delaware, guided by the concepts set forth in the Restatement Second.[132] Based on this existing and controlling body of law, this Court cannot recognize a new "special relationship" between physicians and all known or potential victims of child abuse, under the MPA, CAPA or otherwise, that would justify the imposition of a tort duty of care under Restate-

ment Second §§ 314A or 315(b) where one does not otherwise exist. Nor can the Court conclude that a common law private right of action is necessary to "assure the effectiveness" of these statutory provisions.[133]

### 2. The "Negligent Undertaking" Claim Under Restatement Second § 323

Class plaintiffs argue that the Medical Society defendants undertook to render services to them by: (1) promulgating aspirational principles for the organization; and (2) investigating and considering Ms. Barnes' reports regarding Dr. Bradley.[134] They contend that both of these actions reflect the sort of "undertaking" to protect Dr. Bradley's patients contemplated by Restatement Second § 323.[135] The Court disagrees.

### a. The Medical Society's By–Laws Do Not Constitute an "Undertaking" To Protect The Class Plaintiffs

In their amended complaint, class plaintiffs allege that the Medical Society has stated in its aspirational principles of membership that its members will "*strive to expose physicians deficient in character*

129. *Id.* (citations omitted).

130. *Id.* (citations omitted).

131. *See, e.g.,* RESTATEMENT (THIRD) TORTS § 38 cmt. a (explaining that § 38 addresses "the role of statutes in supporting the recognition of new affirmative duties in tort" because "courts regularly confront" this proposition and "[n]o provision in the Restatement Second of Torts [sufficiently] addressed" it); cmt. e (recognizing that courts have rendered inconsistent decisions with regards to imposing affirmative duties based on statutory provisions "and it is difficult to discern any specific rule that emerges from the cases").

132. *See Riedel,* 968 A.2d at 22.

duty requires.") (citing Restatement Second §§ 285–288).

133. RESTATEMENT (SECOND) TORTS § 874A.

134. Am. Compl. ¶¶ 116, 121.

135. *Id.* RESTATEMENT (SECOND) TORTS § 323 provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) the harm is suffered because of reliance of the other or the third person upon the undertaking.

and competence." [136] They point to this statement as a basis to argue that the Medical Society defendants undertook to protect them in a manner that triggered a duty to act under § 323.[137]

■ The degree of action or inaction required to constitute a § 323 "undertaking" ranges across courts from a mere promise to act to a promise coupled with an affirmative act in performance of the promise.[138] No matter where this Court's interpretation of § 323 falls on that spectrum, a statement of aspirational goals that an organization's members will strive to uphold does not meet the prerequisites for even the most minimal of the recognized undertakings—a mere promise. Many volunteer organizations provide a statement of aspirational goals to their members, none of which are understood as undertakings to provide specific services to specific persons that would subject the organization to liability.[139] In fact, the principles adopted by the Medical Society and identified by class plaintiffs are "not laws, but standards of conduct which de-

fine the essentials of honorable behavior for the physician." [140] No legal duty arises from these statements that would be owing to anyone, including class plaintiffs.[141]

### b. The Medical Society Made No Other § 323 Undertaking To The Class Plaintiffs

■ Class plaintiffs argue that, under Restatement Second § 323, the Medical Society defendants assumed liability for the harm to Dr. Bradley's patients when they undertook to review Ms. Barnes' concerns regarding her brother's conduct and mental status. There are several structural problems with class plaintiffs' effort to invoke § 323 under this scenario, even if the Court assumes that the Medical Society defendants' response to Ms. Barnes' reports qualified as an undertaking. Specifically, class plaintiffs' have failed to plead: (1) that the Medical Society defendants directed their alleged undertaking to class plaintiffs (as "the other" claiming a right to protection); [142] or (2) that class plaintiffs relied upon those promises. In-

136. Am. Compl. ¶ 116(a) (emphasis supplied).

137. *Id.*

138. *See* RESTATEMENT (SECOND) TORTS § 323 cmt. d.

139. *See, e.g., In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 745, n. 399 (Del.Ch. 2005) ("Aspirational ideals of good corporate governance practices for boards of directors that go beyond the minimal legal requirements of the corporation law are highly desirable.... But they are not required by the corporation law and do not define standards of liability.") (quoting *Brehm v. Eisner*, 746 A.2d 244, 256 (Del.2000)), *aff'd*, 906 A.2d 27 (Del.2006); *Tackes v. Milwaukee Carpenters Dist. Council Health Fund*, 164 Wis.2d 707, 476 N.W.2d 311, 314–15 (App.1991) (noting that the code of ethics of an association of insurance agents is "merely ... an exhortatory expression of common ideals" and does not establish a standard of care); *Hamon Con-*

*tractors Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 296–97 (Colo.App.2009) (explaining that an opinion as to engineering ethics does not establish standard of care).

140. *See* American Medical Association Principles of Medical Ethics, Preamble.

141. To the extent class plaintiffs have once again realleged that the existence of the MPA and CAPA, and the physicians' obligation to abide by them, constitutes an undertaking, the Court again reiterates that "[t]he performance of a statutory mandate alone cannot reasonably be characterized as gratuitous" within the parameters of § 323. *See Bradley I*, 2011 WL 290829, at *10.

142. *See* RESTATEMENT (SECOND) TORTS § 323 ("One who undertakes ... to render services *to another* ... for the protection of *the other's* person or things, ... is subject to liability to *the other* for physical harm ....") (emphasis supplied).

stead, the amended complaint repeatedly alleges that the Medical Society defendants considered Ms. Barnes' inquiries and made assurances directly to her.[143] There is no suggestion that class plaintiffs knew anything about Ms. Barnes' interactions with the Medical Society defendants.[144] Based on these fatal deficiencies in class plaintiffs' amended complaint, the claims against the Medical Society defendants pursuant to § 323 based upon Ms. Barnes' reports must fail.

### 3. The "Negligent Undertaking" Claim Under Restatement Second § 324A

As noted above, upon reviewing the arguments of the parties with respect to Restatement Second § 323, the Court was drawn to the provisions of Restatement Second § 324A which, on its face, appeared to fit more squarely within the facts plead in the amended complaint re-

garding the Barnes reports.[145] Restatement Second § 324A provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.[146]

The Court will address these elements *seriatim*.

---

**143.** *See, e.g.*, Am. Compl. ¶ 37 ("Barnes relied on the Medical Society, Tavani and Marvel, and their professional relationship with a physician member of the Society, to take appropriate action to help her brother and protect his patients. As a result of this detrimental reliance and the false assurances she received from Tavani and Marvel, she took no additional action."); ¶ 116(b) ("Defendant Medical Society assumed a duty to plaintiffs by: ... [m]aking promises and assurances to Barnes ...."); ¶ 121(b) ("Defendants Tavani and Marvel assumed a duty to plaintiffs by: ... [m]aking promises and assurances to Barnes....").

**144.** *See Green v. Unity Sch. of Christianity*, 991 S.W.2d 201, 206 (Mo.Ct.App.1999) (concluding that publishing a safety brochure was not an undertaking under § 323 because appellants failed to show that appellants even knew that the brochure existed, let alone that they had relied upon it).

**145.** The Court invited argument from the parties regarding whether class plaintiffs should be permitted to assert a claim under Restatement Second § 324A when their amended

complaint makes no reference to that provision and their initial responses to the motions to dismiss did not cite that section. Upon consideration of these arguments, the Court is satisfied that class plaintiffs should be permitted to assert their § 324A claim now. While it is true that their amended complaint refers only to Restatement Second §§ 315 and 323, it is also true, as class plaintiffs argue, that they need not plead specific provisions of the Restatement Second within their complaint in order to survive a motion to dismiss. *See State Farm Fire & Cas. Co. v. Gen. Elec. Co.*, 2009 WL 5177156, at *6 (Del.Super. Dec. 1, 2009) (declining to dismiss counts of complaint that appeared under headings that misstated the nature of claims). As discussed below, the amended complaint, as plead, put the Medical Society on notice of the factual bases for a claim of negligence under Restatement Second § 324A as required by Del.Super. Ct. Civ. R. 9(b). This is all that is required to survive a motion to dismiss. *Id.*

**146.** Restatement (Second) Torts § 324A.

### a. The "Undertaking"

■ As is the case with a claim under § 323, the plaintiff seeking to invoke § 324A must first establish that the defendant has "undertake[n]" to render services to "another." [147] Unlike the undertaking contemplated in § 323, however, the § 324A undertaking is not initiated for the sole protection of the person to whom the undertaking is made. Rather, the § 324A undertaking contemplates "the protection of a third person" as well. [148] Class plaintiffs argue that they have adequately plead an "undertaking" initiated by the Medical Society defendants to Ms. Barnes for the protection of Dr. Bradley's patients by alleging that the Medical Society defendants assured Ms. Barnes they would investigate her reports that her brother, *inter alia*, had "improperly touched patients." [149]

The Medical Society defendants argue that class plaintiffs' allegations fall short of pleading an actionable undertaking because: (1) they have alleged, at best, a mere promise to act when they were required, under § 324A, to plead both a promise and some effort to perform that promise; and (2) any "undertaking" that may have been initiated was for the express benefit of Dr. Bradley, the impaired physician who was the subject of Ms. Barnes' report, not Dr. Bradley's patients. [150] Class plaintiffs, of course, disagree.

It does not appear that Delaware courts have weighed in on the question of whether a promise alone will satisfy the "undertaking" element of §§ 323 or 324A. [151] The Reporters of the Restatement Second likewise "express[ ] no opinion as to whether … the making of a contract, or a gratuitous promise, without in any way entering upon performance, may be a sufficient undertaking to result in liability under the rule." [152] And, courts elsewhere are split

147. *Id.*

148. *Id.*

149. *See* Plaintiffs' Memorandum of Law Regarding Consideration of Restatement (Second) of Torts § 324A ("Pl.Supp.Mem.") at 6, D.I. 42172623 (Jan. 27, 2012); Am. Compl. ¶¶ 29–43, 115–124.

150. *See* Supplemental Brief of the Medical Society Defendants In Support of Their Motion to Dismiss the Amended Complaint ("Def.Supp.Br.") at 2–8, D.I. 42181582 (Jan. 27, 2012).

151. Having said this, the Court has not found (and the parties have not cited) a single Delaware decision that has applied § 324A to a case where the defendant's conduct involved only a promise to perform an undertaking (express or implied) without at least some performance of that promise. *See, e.g., Mergenthaler v. Asbestos Corp. of America, Inc.,* 1989 WL 48601, at *2–3 (Del.Super. Apr. 28, 1989) (applying § 324A to allegations that defendant undertook for the benefit of third parties to provide safety training to its employees and then provided faulty training and employed substandard safety practices) (cited in Pl. Supp. Mem. at 8–10); *Patton v. Simone,* 626 A.2d 844, 848–49 (Del.Super.1992) (applying § 324A to allegations that defendant undertook for the benefit of third parties to provide safety inspections at a construction site and then negligently did so) (cited in Def. Supp. Br. at 6, 10, 11); *Rogers v. Christina Sch. Dist.,* C.A. No. N10C–07–060JRJ, 2012 WL 1415623 (Del.Super. Jan. 20, 2012) (Mem. Op. not available on Westlaw®) (applying § 323, with similar undertaking language, to allegations that defendant undertook to provide counseling to suicidal student and then negligently did so) (cited in Def. Supp. Br. at 7, 11); *Furek v. Univ. of Del.,* 594 A.2d 506, 519–20 (Del.1991) (applying § 324A to allegations that defendant undertook for the benefit of third parties to provide a safe college campus and then, *inter alia,* provided poor safety training to campus fraternities) (cited in Def. Supp. Br. at 9–10).

152. RESTATEMENT (SECOND) TORTS § 324A caveat.

on the issue.[153] The Court need not decide the issue here, however, because class plaintiffs have alleged both a promise to perform an undertaking (the commitment to Ms. Barnes to "investigate" her reports regarding Dr. Bradley)[154] and partial (albeit allegedly inadequate) performance of that promise (the presentation of Ms. Barnes' reports to the PHC and subsequent determination by the PHC to defer to the Board for further action).[155] Class plaintiffs' allegations that the Medical Society defendants received Ms. Barnes' reports regarding Dr. Bradley, discussed them with her, discussed and considered them at a meeting of the PHC, and then determined that the reports should be addressed by the Board, all amount to an allegation that the Medical Society defendants engaged in an "affirmative act," i.e., partial performance of their undertaking to consider Ms. Barnes' reports and to take the "appropriate action."[156] These allegations adequately plead an "undertak[ing] ... to render services to another which he should recognize as necessary for the protection of a third person" under Restatement Second § 324A.

The Medical Society defendants' argument that any undertaking they may have initiated was directed to Dr. Bradley and not to his patients may well prove to be fatal to plaintiffs' § 324A claim on a summary judgment record but it is premature on a motion to dismiss. Class plaintiffs have adequately plead that the Medical Society defendants initiated an undertaking, directed to Ms. Barnes, to protect Dr. Bradley's patients from his ongoing misconduct (including improper

**153.** *See* Restatement (Second) Torts § 323 cmt. d & *Reporters' Notes* (citing cases in which liability in tort has been based on a bare promise or "relatively trivial and unimportant acts," as well as "a great many cases which have held, or said, that the bare promise is not enough for tort liability"); Restatement (Second) Torts § 324A cmt. on caveat ("Comments *d* and *e* on the Caveat to § 323 are applied to the caveat in this Section, so far as they are pertinent."); Dan B. Dobbs, The Law of Torts § 320, at 865 (2001) ("When the gratuitous promise is one aimed at the plaintiff's physical safety, contemporary authority does not seem to exclude the duty merely because the defendant has not entered into performance.") (citing cases); Prosser & Keeton on Torts § 56, at 378–79 ("Due to its apparent harshness, [ ], the old rule [requiring some performance] has served chiefly as a point of departure; and very little is required for the assumption of a duty.").

**154.** Am. Compl. ¶¶ 33, 35, 36, 116, 117, 121, 122.

**155.** *Id.* at ¶¶ 38–40.

**156.** *Id.* at ¶¶ 33–36, 38–40, Exs. A–C. *See Price*, 26 A.3d at 167 ("In the case of misfeasance, the party who 'does an affirmative act' owes a general duty to others 'to exercise the care of a reasonable man ....'") (quoting Restatement Second § 302 cmt. a); *Furek*, 594 A.2d at 520 ("If one 'takes charge and control of [a] situation, he is regarded as entering [voluntarily] into a relation which is atten[d]ed with responsibility.'") (quoting Prosser & Keeton on Torts § 56, at 378); *Thames Shipyard and Repair Co. v. United States*, 350 F.3d 247, 261 (1st Cir.2003) ("[T]he Good Samaritan rule ... 'makes one person liable to another for breach of a duty voluntarily assumed by affirmative conduct ....'") (internal citation omitted). Such affirmative steps in performance of the undertaking would trigger liability even in those courts with the most restrictive reading of Restatement Second § 324A (requiring a promise plus some performance of the promise). *See, e.g., Bell v. Hutsell*, 353 Ill.Dec. 288, 955 N.E.2d 1099, 1108 (2011) ("[F]or there to be a substantial step in pursuit of the alleged undertaking, there must have been some affirmative action taken in an attempt to [... reach] the ultimate objective of the undertaking."); *Patentas v. United States*, 687 F.2d 707, 716 (3d Cir.1982) ("The foundation of the good samaritan rule is that the defendant specifically has undertaken to perform the task that he or she is charged with having performed negligently.") (emphasis supplied).

"touch[ing]").[157] Whether the undisputed facts will support this allegation remains to be seen.[158]

### b. The "Increased Risk of Harm"

 Having determined that class plaintiffs have adequately plead an "undertaking," the Court next must consider whether they have adequately plead the additional elements of a § 324A claim as alternatively set forth in §§ 324A(a) through (c). The first of these alternative elements poses the question whether the Medical Society defendants' failure to exercise "reasonable care" in the performance of the undertaking "increase[d] the risk of [ ] harm" to class plaintiffs. For purposes of § 324A, "[a]n increased risk means some physical change to the environment or material alteration of the circumstances."[159] The Medical Society defendants argue that class plaintiffs have failed to (and cannot) plead that the failure to perform their alleged undertaking to Ms. Barnes to protect Dr. Bradley's patients actually *increased* the risk of harm these patients were already facing. The Court agrees.

 To allege an increased risk of harm under § 324A, a plaintiff must do more than allege that the defendant's fail-

ure to perform the undertaking allowed an existing hazard to continue unabated.[160] "[F]or purposes of the section 324A 'good samaritan' doctrine, a risk is increased when a *nonhazardous* condition is made *hazardous* through the negligence of a person who changed its condition or caused it to be changed."[161] Stated differently:

> The test is not whether the risk was increased over what it would have been if the defendant had not been negligent. Rather, a duty is imposed only if the risk is increased over what it would have been had the defendant not engaged in the undertaking at all. This must be so because the preliminary verbiage in Section 324A assumes negligence on the part of the defendant and further assumes that this negligence caused the plaintiff's injury. If we were to read subsection (a) as plaintiffs suggest, *i.e.*, that a duty exists where the negligence increased the risk over what it would have been had the defendant exercised due care, a duty would exist in every case. Such a reading would render subsections (b) and (c) surplusage and the apparent purpose of all three subsections to limit the application of the section would be illusory.[162]

---

157. *Id.* at ¶¶ 34–36.

158. *See Furek*, 594 A.2d at 520 (holding that trial court properly granted summary judgment on plaintiff's § 324A claim upon concluding that defendant did not initiate an undertaking for the protection of the plaintiff); *Mergenthaler*, 1989 WL 48601, at *2–3 (denying motion to dismiss upon concluding that plaintiff adequately plead that defendant initiated an undertaking for the protection of the plaintiff).

159. *Patton*, 626 A.2d at 850–51 (citing *Patentas*, 687 F.2d at 717).

160. *See Ricci v. Quality Bakers of Amer. Coop. Inc.*, 556 F.Supp. 716, 720 (D.Del.1983).

161. *Howell v. United States*, 932 F.2d 915, 918–19 (11th Cir.1991) (emphasis supplied).

162. *Myers*, 17 F.3d at 903. *See also Rogers*, *supra*, slip op. at 16 (noting that the notion of increased risk of harm as used in § 323 contemplates that the "defendant's actions increased the risk of harm to plaintiff relative to the risk that would have existed had the defendant never provided the services initially," or, "[p]ut another way, the defendants' negligent performance must somehow put the plaintiff in a worse situation than if the defendant had never begun performance") (citation omitted); *Patton*, 1992 WL 398478, at *4 (holding that defendant may not be held liable under § 324A for a risk of harm that exists "independently of any of its undertakings").

The amended complaint says nothing of an increased risk of harm caused by the Medical Society defendants' failure properly to perform their undertaking. This failure is not surprising given that the harm alleged is the ongoing abuse Dr. Bradley's patients suffered within his medical practice because the Medical Society defendants failed to report the abuse to appropriate authorities. According to the amended complaint, the abuse was occurring before the alleged undertaking, and it continued to occur after the undertaking.[163] Nothing alleged in the amended complaint would support an inference that the Medical Society defendants' failure properly to follow through on Ms. Barnes' reports caused "some material change to the [deplorable] environment" that already existed within Dr. Bradley's medical practice.[164] Consequently, class plaintiffs have failed to state a viable claim under § 324A(a).

### c. The Assumption of Another's Duty

Section 324A(b) would support the imposition of a duty upon the Medical Society defendants if, as a matter of plead facts and as a matter of law, the Court could conclude that these defendants somehow had "undertaken to perform a duty owed by [Ms. Barnes] to the [class plaintiffs]."[165] Class plaintiffs argue that Ms. Barnes, as an employee of Dr. Bradley's medical practice, owed a statutory duty to report her concerns regarding Dr. Bradley's improper touching of his patients to the appropriate authorities under both the CAPA and MPA and that the Medical Society defendants voluntarily assumed that duty.[166] Having already rejected class plaintiffs' argument that the CAPA and MPA impose an actionable tort duty upon any of the defendants in this action, the Court cannot very well justify a finding that the Medical Society defendants are liable under § 324A(b) for failing to perform a tort (as opposed to statutory) duty of Ms. Barnes' that does not, as a matter of law, exist.[167] The amended complaint fails to state a claim under § 324A(b).

### d. Reliance Upon The Undertaking

Section 324A(c) provides that a defendant will be held liable if either the person to whom the defendant's undertaking was made, or the third person whose protection is the subject of the undertaking, suffers harm as a result of "reliance ... upon the undertaking."[168] The harm contemplated in this provision is not the "increased" harm contemplated in § 324A(a), but rather is "harm [ ] suffered because of the reliance...."[169] As previously noted, class plaintiffs have not and can not plead that *they* relied upon the Medical Society defendants' alleged undertaking to Ms. Barnes because there is no allegation that they even knew of it when or after it was made. But class plaintiffs have alleged that *Ms. Barnes* relied upon the undertaking and that, "[a]s a result of this detrimental reliance and the false assurances she received from [the Medical Society defendants], she took no further

---

163. Am. Compl. ¶¶ 16, 22, 56.

164. *See Patton,* 626 A.2d at 850–51.

165. RESTATEMENT (SECOND) TORTS § 324A(b).

166. Pl. Supp. Mem. at 7 (citing 16 *Del. C.* § 903 and 24 *Del. C.* § 1731A).

167. The Court notes that the amended complaint contains no allegation that the Medical Society defendants assumed any duty that may have been owed by Ms. Barnes to Dr. Bradley's patients.

168. RESTATEMENT (SECOND) TORTS § 324A(c).

169. *Id.* at cmt. e.

action."[170] This sort of forbearance, if proven, would be the type of detrimental "reliance" contemplated by § 324A(c).[171] Thus, class plaintiffs have plead a viable claim under § 324A(c).

### 4. Class Plaintiffs Have Not Plead Facts That Would Support A Claim Under Delaware's Medical Negligence Statute

 Lastly, class plaintiffs allege in the amended complaint that the failure of Drs. Marvel and Tavani "to report professional misconduct of which they knew or should have known to police or professional regulation authorities" was a breach of their common law duties as health care providers and, thus, constituted medical negligence.[172] Under Delaware law, medical negligence is governed by statute.[173] Under the statute, "medical negligence" is defined as "any tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider *to a patient.*"[174] A "patient" is defined as: "a natural person who receives or should have received health care from a licensed health care provider under a contract, ex-

press or implied."[175] As clearly revealed by these definitions, medical negligence under Delaware law is premised upon the delivery of health care services in an existing doctor-patient relationship.[176] When no such doctor-patient relationship exists, there can be no claim of medical negligence.[177] Class plaintiffs have not alleged in the amended complaint, and have presented no extraneous evidence to suggest, that the Medical Society defendants treated any of Dr. Bradley's patients or otherwise maintained a doctor-patient relationship with them. Consequently, class plaintiffs' claims of medical negligence against the Medical Society and Drs. Marvel and Tavani fail as a matter of Delaware law.

### 5. Statutory Peer Review Immunity

Since the Court has determined that class plaintiffs have stated a viable claim of negligence against the Medical Society defendants under Restatement Second § 324A(c) arising from their handling of Ms. Barnes' reports, the Court must now consider whether the allegations within the amended complaint fail as a matter of law

170. Am. Compl. ¶ 37. The Court acknowledges that the Medical Society defendants have argued that Ms. Barnes has contradicted this allegation in her deposition testimony. If this is so, the Medical Society defendants may renew the argument in support of a motion for summary judgment (presumably on a complete factual record).

171. *See* RESTATEMENT (SECOND) TORTS § 324A(c) cmt. e ("Where the reliance of the other, or of the third person, has induced him to forgo other remedies or precautions against such a risk, the harm results from the negligence as fully as if the actor had created the risk."); *Mergenthaler*, 1989 WL 48601, at *3 (quoting cmt. e to § 324A(c)).

172. Am. Compl. ¶¶ 65–73.

173. 18 *Del. C.* § 6801, *et seq.*

174. 18 *Del. C.* § 6801(7) (emphasis supplied).

175. 18 *Del. C.* § 6801(8).

176. *See, e.g., Murphy v. Godwin,* 303 A.2d 668, 674–74 (Del.Super.1973) (denying defendant's motion for summary judgment where the Court found an "already existing and definite relationship" between doctor and patient to support the claim of negligence).

177. *See id.* (explaining that liability under a theory of negligent nonfeasance must be predicated on an "existing and definite relationship"). *See also Spicer v. Osunkoya,* 32 A.3d 347, 350 (Del.2011) (holding that a doctor who had no further involvement in the treatment or care of a patient after referral and knew nothing of the specialist's negligence had no duty to the patient after the referral).

in light of the immunity provisions of Delaware's so-called peer review statute.[178] For the reasons set forth below, the Court is satisfied that, as of now, they do not.

Delaware's Medical Peer Review Statute provides in pertinent part:

[T]he Medical Society of Delaware, their members, and the members of any committees appointed by the ... Society; ... and members of other peer review committees or organizations whose function is the review of medical records, medical care, and physicians' work, with a view to the quality of care ... are immune from claim, suit, liability, damages, or any other recourse, civil or criminal, arising from any act, omission, proceeding, decision, or determination undertaken or performed, or from any recommendation made, so long as the person acted in good faith and without gross or wanton negligence ... with good faith being presumed until proven otherwise, and gross or wanton negligence required to be shown by the complainant.[179]

Class plaintiffs allege that the Medical Society defendants received Ms. Barnes' re-port in their positions as peer reviewers within the Medical Society's PHC.[180] It is clear, therefore, that these defendants have properly invoked the peer review statute.[181] To avail themselves of the statute's immunity provisions, they must establish: (1) they acted in good faith; and (2) without gross or wanton negligence.[182] Of course class plaintiffs have alleged that the Medical Society defendants acted in bad faith and/or that their actions constituted gross or wanton negligence.[183] If ultimately proven, such facts may overcome the statute's presumption of good faith and proper conduct.

As discussed above, the pleading standard on a motion to dismiss in Delaware is minimal.[184] Generally, the plaintiff must put the defendant on notice of the claims against him and provide a reasonable set of circumstances upon which he might recover.[185] Class plaintiffs allege negligence and must, therefore, satisfy Rule 9(b)'s requirement that these claims be plead with particularity.[186] This means their claims of negligence (and gross negligence) may not be conclusory and must be accompanied by some factual allegations to support them.[187]

178. 24 *Del. C.* § 1768.

179. 24 *Del. C.* § 1768(a).

180. Am. Compl. ¶¶ 30–37.

181. The Court has determined that the only viable claim against the Medical Society defendants is the § 324A claim arising from Ms. Barnes' reports to the Medical Society defendants in their capacity as peer reviewers. Accordingly, the Court need not address whether the Medical Society defendants are immune from class plaintiffs' other claims against them.

182. 24 *Del. C.* § 1768(a); *Sternberg v. Nanticoke Memorial Hosp., Inc.,* 15 A.3d 1225, 1232–33 (Del.2011).

183. Am. Compl. ¶ 42 ("The conduct of Tavani and Marvel, and the Physicians' Health

Committee, constituted malfeasance, nonfeasance, and a deliberate and intentional cover-up of complaints about a fellow physician who was a threat to his patients."); ¶¶ 118, 123 ("Defendants[' ...] breach of their common law duty of care constituted negligence, carelessness, recklessness, and wanton conduct.").

184. *Cent. Mortgage Co. v. Morgan Stanley Mortgage Capital Holdings LLC,* 27 A.3d 531, 536 (Del.2011).

185. *Id.*

186. Del.Super. Ct. Civ. R. 9(b).

187. *Browne v. Robb,* 583 A.2d 949, 953 (Del. 1990) ("It is insufficient to merely make a general statement of the facts which admits of almost any proof to sustain it.") (internal quo-

In their amended complaint, class plaintiffs claim that the "conduct of Tavani and Marvel, and the Physicians' Health Committee, constituted ... a deliberate and intentional cover-up of complaints about a fellow physician who was a threat to his patients"[188] and that the breach of their duties constituted "gross negligence."[189] To support those claims, class plaintiffs provided three and a half pages of factual allegations about the PHC's investigation (or lack thereof), the representations made to Ms. Barnes with regard to her expressed concerns, and the Medical Society defendants' decision to do nothing in response to the reports of potential child abuse.[190] These particularized factual allegations on the face of the amended complaint, taken as true, reasonably infer that, under at least one conceivable set of circumstances, the Medical Society defendants acted in bad faith and/or with a level of negligence that represents "an extreme departure from the ordinary standard of care."[191] Accordingly, the Court is satisfied that the amended complaint adequately pleads a claim against the Medical Society defendants that could overcome these defendants' attempt to invoke the statutory peer review immunity.

### 6. The Court Will Entertain A Motion For Summary Judgment On The Section 324A Claim And Peer Review Immunity

As discussed at some length in the Court's analysis of the standard of review, the Court has elected to consider this motion under the standard of review contemplated by Rule 12(b)(6) notwithstanding that the parties have submitted matters beyond the pleadings in their briefs on the motion. The Court is mindful that among the extraneous materials submitted are full or excerpted portions of deposition transcripts from Ms. Barnes, Dr. Tavani and Dr. Marvel. In addition, the Court has received meeting minutes of the PHC (attached to the amended complaint) reflecting the committee's handling of Ms. Barnes' report of her brother's behavior. This evidence may well complete the factual record relating to the extent and nature of the Medical Society defendants' alleged undertaking to Ms. Barnes, and the extent to which (if at all) she relied upon the undertaking, although the Court has no way of knowing this for sure. In any event, for the reasons already stated in the standard of review analysis, and for the reasons discussed below, the Court has declined to consider the extraneous matters at this time.

For their part, the Medical Society defendants have relied upon the extraneous evidence rather extensively in their submissions and they urge the Court to consider all of it in determining whether the negligence claims against them can move forward. There is, of course, a ring of efficiency in this proposal. And yet, through no fault of anyone, the process of deciding the pending motions has been anything but efficient. The Court has

---

tation omitted). The Supreme Court in *Browne* affirmed the trial court's Rule 12(b)(6) dismissal of a complaint that was "merely a recitation of conclusory charges [of gross negligence] totally lacking in specificity" and was "insufficient to overcome the statutory grant of qualified immunity under 10 *Del. C.* § 4001." *Id.*

**188.** Am. Compl. ¶ 42.

**189.** *Id.* ¶¶ 118, 123.

**190.** *See id.* ¶¶ 29–43.

**191.** *Brown v. United Water Delaware, Inc.,* 2010 WL 2052373, at *4 (Del.Super. May 20, 2010) ("Gross negligence is defined as a higher level of negligence representing an extreme departure from the ordinary standard of care.") (internal quotations omitted).

called for two rounds of supplemental submissions from various parties and has taken substantial time in deciding the complex issues presented by the motions. Giving the requisite notice of its intent to convert certain aspects of the Medical Society defendants' motion to dismiss into a motion for summary judgment would cause further delay and would deprive the other parties of the decisions contained within this opinion and order.[192] The time has come for the Court to advise the parties whether the amended complaint states legally viable claims against all of the moving defendants. Further delay is not efficient.[193]

With this said, it remains the Court's desire to determine which of class plaintiffs' claims will proceed to trial, and which will not, as efficiently and expeditiously as practicable under the circumstances. Accordingly, if the Medical Society defendants believe that the factual record is adequate to allow them to seek summary judgment on the § 324A claim and/or their peer review immunity defense, they may do so now and, if they wish, they may rely upon and/or incorporate some or all of their previous filings in connection with their motions to dismiss.[194] Of course, if class plaintiffs believe that the factual record is not complete, they may respond to the Rule 56 motion with a Rule 56(f) affidavit (setting forth the additional discovery that must be taken before the Court may address the motion).[195]

## B. The Claims Against The Individual Defendants And Dr. Marvel In His Capacity As A Staff Physician At Beebe

### 1. The Nonfeasance Claims Under Restatement Second § 315

 Class plaintiffs have alleged that each of the individual defendants, and Dr. Marvel while a staff physician at Beebe, failed to take "appropriate action" when faced with knowledge of Dr. Bradley's misconduct.[196] Pursuant to the Restatement Second, *Riedel* and *Price*, these claims constitute claims of nonfeasance.[197] Accordingly, class plaintiffs must plead facts that would implicate an exception to the Restatement Second's general rule that there is no duty to act.[198] Thus, the Court once again must focus on the "special relationships" that allegedly exist between these defendants and either Dr. Bradley or Dr. Bradley's patients.[199]

### a. Class Plaintiffs' Nonfeasance Claims Against Drs. Ludwicki, Scott and Marvel

 Although there are subtle differences in the allegations directed against

---

**192.** *See Furman,* 30 A.3d at 774 (holding that trial court commits reversible error when it converts a motion to dismiss to a motion for summary judgment without first giving notice to the parties and a "reasonable opportunity to respond").

**193.** *See* Del.Super. Ct. Civ. R. 1.

**194.** *See Furek,* 594 A.2d at 520 (noting fact intensive analysis is required under § 324A); *Vick v. Haller,* 522 A.2d 865, 1987 WL 36716, at *4 (Del.1987) (TABLE) (recognizing that in cases where extensive evidentiary matter has been provided to the court and where the court faces issues like "good faith" and "gross negligence" which must be determined based

on factual analysis, the issues "might be [more] appropriately resolved in the framework o[f] a motion for summary judgment").

**195.** Del.Super. Ct. Civ. R. 56(f).

**196.** Am. Compl. ¶¶ 23, 49.

**197.** *See* RESTATEMENT (SECOND) TORTS §§ 282, 284(b), 302, 314; *Riedel,* 968 A.2d at 22; *Price,* 26 A.3d at 167.

**198.** *See* RESTATEMENT (SECOND) TORTS § 314.

**199.** *See* RESTATEMENT (SECOND) TORTS §§ 315(a) & (b).

the individual physicians, class plaintiffs generally allege that Dr. Ludwicki,[200] Dr. Scott,[201] and Dr. Marvel [202] maintained a "special relationship" with Dr. Bradley and with his patients based on their professional affiliations with Dr. Bradley. Class plaintiffs emphasize that each defendant's "unique position" as a Delaware physician, colleague or co-employee of Dr. Bradley creates the "special relationship" giving rise to a duty to control Dr. Bradley and to protect class plaintiffs.

Whether class plaintiffs argue in terms of §§ 315(a) or (b), the types of professional relationships they have alleged in their amended complaint between either Dr. Bradley or his patients and the individual defendants and Dr. Marvel are not of a kind that will support viable claims of negligence under Delaware law. As discussed at length above with respect to the Medical Society defendants, the relationships that will trigger a duty to act must fit within the purview of the Restatement Second, and must be supported by factual allegations that show more than defendants' knowledge of misconduct by Dr. Bradley or potential harm to his patients.[203] Class plaintiffs have made numerous factual allegations regarding the different sources of the individual defendants' knowledge of Dr. Bradley's misconduct,[204] but they have failed to allege or otherwise provide any facts that would

---

**200.** Specifically, class plaintiffs allege that Dr. Ludwicki's "special relationship" with Dr. Bradley arises from the following facts: Dr. Ludwicki is a licensed physician in Delaware; he has held hospital privileges at Beebe; he is a member of the Medical Society; he was a mandatory reporter under the MPA and CAPA; he was informed by parents of Dr. Bradley's former patients that improper touching had occurred; and he was employed by Beebe at the same time and in the same pediatrics practice as Dr. Bradley, which required that they share "on call" duties. *See* Am. Compl. ¶¶ 12, 15, 19, 23, 45, 48, 50, 103, 105. Class plaintiffs also allege that Dr. Ludwicki "referred his patients to Bradley when he was unavailable." *See* Am. Compl. ¶ 103. The Court will address this last factor—the referral of patients—separately in its discussion of negligent referral.

**201.** Class plaintiffs allege that Dr. Scott's "special relationship" with Dr. Bradley arises from the following facts: Dr. Scott is a licensed physician in Delaware; he has held hospital privileges at Beebe; he is a member of the Medical Society; he was a mandatory reporter under the MPA and CAPA; he heard reports about Dr. Bradley's misconduct, [REDACTED] and he worked as a co-employee in private practice with Dr. Bradley from 1997 to 2000. *See* Am. Compl. ¶¶ 10, 15, 24, 25, 47, 50, 103.

**202.** In addition to allegations against Dr. Marvel arising from his role with the Medical Society, class plaintiffs allege that Dr. Marvel's "special relationship" with Dr. Bradley and plaintiffs arises from the following facts: Dr. Marvel is a licensed physician in Delaware; he has held hospital privileges at Beebe; he is a mandatory reporter under the MPA and CAPA; he has served on various committees of Beebe and in its administration; and he was interviewed by the Delaware State Police in connection with an investigation of Dr. Bradley in 2004 or 2005. *See* Am. Compl. ¶¶ 8, 15, 23, 27, 50, 97.

**203.** *See* RESTATEMENT (SECOND) TORTS § 314.

**204.** *See, e.g.,* Am. Compl. ¶¶ 24–26 (presenting the factual background for Dr. Berg and Dr. Scott's knowledge of Dr. Bradley's sexual misconduct [REDACTED] ); Am. Compl. ¶ 23 ("Upon information and belief, Marvel, Berg and Ludwicki, as a result of their various relationships with Beebe, knew of allegations of misconduct by Bradley....."); Am. Compl. ¶ 44 ("From the period 2000 to 2009, repeated complaints were made to a number of medical providers concerning Bradley...."); Am. Compl. ¶ 45 ("On several occasions, parents of former Bradley patients complained to staff of Ludwicki concerning improper sexual touching of their children by Bradley."); Am. Compl. ¶ 47 ("Scott's knowledge of Bradley's pedophilia came from the time...."); Am. Compl. ¶ 48 ("Ludwicki's knowledge of Bradley's pedophilia came from the time....").

reveal the underlying "special relationship" that gives rise to a duty to act in response to this knowledge. Specifically, as was the case with their claims against the Medical Society defendants, class plaintiffs have not plead or otherwise provided facts that place the relationships between the individual defendants (and Dr. Marvel) with either Dr. Bradley or his patients within Restatement Second §§ 314A, 316–319, or 320 [205] and, for the reasons discussed above, the Court will not recognize a new affirmative common law tort duty stemming from the statutory language of the MPA or CAPA.

The fact that Dr. Ludwicki, Dr. Scott or Dr. Marvel may have been professional colleagues and/or co-employees with Dr. Bradley does not indicate that they had any means of control over him or a tort duty to protect his patients. In fact, this Court has previously determined that "the relationship that exists between and among physicians licensed to practice within Delaware, without more, . . . is not sufficient to trigger a § 315 duty." [206] Likewise, in the absence of factual allegations

in the amended complaint that the individual defendants and Dr. Marvel shared patients with Dr. Bradley, and thereby maintained doctor-patient relationships with these patients, the Court cannot reasonably infer that Dr. Ludwicki, Dr. Scott or Dr. Marvel had any "special relationship" with Dr. Bradley's patients. For these reasons, class plaintiffs' claims of nonfeasance as plead in the amended complaint against Dr. Ludwicki, Dr. Scott and Dr. Marvel fail to state a viable claim under Delaware law.

### b. Class Plaintiffs' Nonfeasance Claims Against Dr. Berg

Class plaintiffs have similarly alleged that Dr. Berg's professional relationship with Dr. Bradley was "special" for purposes of § 315. [207] They allege primarily that Dr. Berg and Dr. Bradley worked together in the same private practice. [208] As discussed with regards to Drs. Ludwicki, Scott and Marvel, such an arrangement between physicians does not create a duty within the parameters of § 315(a).

[REDACTED]

---

205. To reiterate, as to the alleged special relationship between these physicians and Dr. Bradley, the comments to Restatement Second § 315(a) make clear that the relationships that will give rise to a duty to act to control a third person (in this case Dr. Bradley) "are stated in §§ 316–319." The relationships between and among physicians does not fit within any of these provisions. See RESTATEMENT (SECOND) TORTS § 316 (duty of parent to control child); § 317 (duty of master to control servant); § 318 (duty of possessor of land to control licensee); and § 319 (duty of those in charge of persons having dangerous propensities). The comments to Restatement Second § 315(b) state that the relationships that will give rise to a duty to act to protect another (in this case class plaintiffs) are stated in §§ 314A and 320. See RESTATEMENT (SECOND) TORTS § 314A (describing relationships that give rise to a duty to protect—e.g. common carrier/passenger, innkeeper/guest—that strongly suggest that a re-

lationship between a physician and the patients of another physician even within the same medical practice, is not the sort of relationship that would give rise to a duty to act for the protection of that other physician's patient); § 320 (duty of those having "custody of another"—inapplicable to the facts *sub judice* ).

206. *Bradley I*, 2011 WL 290829, at *8 n. 62.

207. Class plaintiffs allege that Dr. Berg's "special relationship" stems from the following facts: Dr. Berg is a physician licensed to practice medicine in Delaware; he has hospital privileges at Beebe; he was a member of the Medical Society; and he was an employee in the same medical practice as Dr. Bradley for several years. *See* Am. Compl. ¶¶ 14, 15, 23, 50, 111.

208. *Id.*

## 2. Class Plaintiffs' Claims Against the Individual Defendants Under Restatement Second § 323

 In the amended complaint, class plaintiffs allege that Dr. Ludwicki, Dr. Scott and Dr. Berg assumed a duty to class plaintiffs when they undertook to abide by the principles of the Medical Society.[209] They contend that voluntarily undertaking to reveal physician misconduct as a condition of their membership in the Medical Society constitutes an undertaking to perform a "service ... necessary for the protection of" Dr. Bradley's patients.[210] The Court has explained, however, that § 323, as construed by Delaware courts, requires more than an agreement to abide by the aspirational goals of an organization.[211] Class plaintiffs' claims against the individual defendants on this theory, therefore, must be dismissed.[212]

In briefing and at oral argument, class plaintiffs provided extraneous information to the Court to argue that Dr. Ludwicki and his staff undertook to render services to class plaintiffs when someone in his office called the police to report a complaint received from a former Bradley patient.[213] They argue that this phone call constituted a voluntary undertaking "to begin an investigation of abuse by Bradley" on behalf of all of Dr. Bradley's patients.[214] As stated in the standard of review, the Court will not consider this extraneous matter when addressing the motions to dismiss. The Court has, however, considered whether an amended pleading that incorporated these additional facts might state a claim under § 323 upon which relief could be granted. After careful consideration, the Court is satisfied that such an amendment would be futile.

 The flaw in class plaintiffs' § 323 claim based on the alleged patient reports to Dr. Ludwicki's staff reveals a pattern in class plaintiffs' overall approach to § 323— they have once again failed to identify an actionable "undertaking" directed to either the reporting patients or Dr. Bradley's other patients. Rather, it appears that Dr. Ludwicki's staff received two reports of potential abuse from the mothers of two former Dr. Bradley patients and then, on their own initiative, contacted the police to provide the contact information for one of the mothers.[215] There is no indication in the extraneous evidence, nor any mention in the amended complaint, that Dr. Ludwicki's staff made any affirmative commitment to either of Dr. Bradley's former patients, or their parents, through words or conduct, to do anything in response to their reports.[216] Instead, Dr. Ludwicki's staff insisted the patients' parents contact the Children's Advocacy Center and the police on their own so that investigations

209. Am. Compl. ¶ 126.

210. *Id.* See also RESTATEMENT (SECOND) TORTS § 323.

211. To the extent class plaintiffs have realleged that the existence of the MPA and CAPA, and the physicians' obligation to abide by them, constitutes an undertaking, the Court has previously decided that "[t]he performance of a statutory mandate alone cannot reasonably be characterized as gratuitous" within the parameters of § 323. *See Bradley I*, 2011 WL 290829, at *10.

212. Because the individual defendants did not initiate any undertaking to protect class plaintiffs either directly or indirectly, there can be no claim against them under Restatement Second § 324A either.

213. *See* Pls.' Opp. to Ludwicki at 27.

214. *Id.*

215. *See* Pls. Opp. to Ludwicki at 12–14 (citing Phillips Dep. at 42–43).

216. *See id.*

could be undertaken.[217] These extraneous facts are unlike those plead with regard to the Medical Society defendants, where class plaintiffs alleged that those physicians made an affirmative commitment to Ms. Barnes by both words and conduct to take "appropriate action."[218] Simply stated, class plaintiffs cannot construct a negligent undertaking claim against Dr. Ludwicki because he made no undertaking at all.[219]

Class plaintiffs' § 323 claims against the individual defendants, as plead or as argued from the extraneous evidence, are not viable as a matter of law and cannot be revived by amendment. They must be dismissed with prejudice.

### 3. Class Plaintiffs' Claims Of Medical Negligence Against The Individual Defendants

#### a. Class Plaintiffs Have Failed To Plead Medical Negligence Against the Individual Defendants

Class plaintiffs allege in their amended complaint that the failure of the individual defendants "to report professional misconduct of which they knew or should have known to police or professional regulation authorities" was a breach of their common law duties as health care providers and therefore constituted medical negligence.[220] As discussed above, under Delaware law, medical negligence is governed by statute and premised on health care services rendered in an existing doctor-patient relationship.[221] Beyond the definitions of "patient" and "healthcare," the medical negligence statute offers no further guidance regarding the factors a court should consider when determining whether a doctor-patient relationship exists.[222] The balance of the statutory provisions assume the presence of a doctor-patient relationship.[223] It is generally understood, however, that a doctor-patient relationship is consensual and begins when the patient knowingly seeks the assistance of the physician and the physician knowingly accepts him or her as a patient.[224] That interaction between the patient and doctor is necessary to create the contract for medical services, express or implied.[225]

217. *Id.*

218. Am. Compl. ¶¶ 33, 35, 36 (assuring Ms. Barnes that her reports would go through a review process). *See* DAN B. DOBBS, THE LAW OF TORTS § 319, at 860 (2001) ("An undertaking . . . is a kind of explicit or implicit promise, or at least a commitment expressed in conduct.").

219. For this reason, a § 324A claim would fail as well.

220. Am. Compl. ¶¶ 65–73.

221. *See* Del. C. Ann. tit. 18 § 6801, *et seq.*

222. *See* 18 *Del. C.* § 6801(4), (7); discussion *supra* Part V.A.4.

223. *See, e.g., id.* § 6801(7) (defining "medical negligence" as "any tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider *to a patient*") (emphasis supplied); *id.* § 6853 (providing that expert testimony regarding the health-care provider's "deviation from the applicable standard of care" and "causation of the alleged personal injury or death [of the patient]" is required to sustain a claim of medical negligence).

224. *See* 70 C.J.S. PHYSICIANS AND SURGEONS § 76 (citing cases).

225. *See, e.g., Ortiz v. Shah,* 905 S.W.2d 609, 611–12 (Tex.App.1995) (holding that a physician's agreement to abide by hospital by-laws and policies was not sufficient to create doctor-patient relationship); *Lection v. Dyll,* 65 S.W.3d 696, 705 (Tex.Ct.App.2001) ("If . . . no prior relationship exists between physician and patient, an on-call physician may assume a duty to the patient if he takes *some affirmative action* to treat the patient.") (internal citations omitted) (emphasis in original).

■ As framed in the amended complaint, the Court can not rationally infer that the individual defendants took any affirmative action to provide health care services to any of Dr. Bradley's patients. Class plaintiffs' allegations that Dr. Scott and Dr. Berg worked in the same practice as Dr. Bradley, or that Dr. Ludwicki was at times "on call" with Dr. Bradley, are not enough to establish the express or implied contract that exemplifies a doctor-patient relationship.[226] And, in Delaware, when no doctor-patient relationship exists, there can be no claim of medical negligence.[227] It follows, then, that class plaintiffs' claims against the individual defendants under Delaware's medical negligence statute, as presented in the amended complaint, must fail.

**b. Class Plaintiffs May Amend Their Complaint Against The Individual Defendants To Attempt To State Claims For Medical Negligence And/Or Common Law Negligence Under Restatement Second § 315(b)**

The Court has been presented with extraneous matter indicating that facts may exist to support claims of medical negligence arising from the doctor-patient relationships between Drs. Scott and Berg and some of the class plaintiffs.[228] For instance, class plaintiffs allege in their response to Dr. Scott's motion to dismiss that Dr. Scott and Dr. Bradley shared patients at a time when Dr. Scott knew that Dr. Bradley was abusing his patients.[229] In response to Dr. Berg's motion to dismiss, class plaintiffs allege that Dr. Berg and Dr. Bradley "treated the same patients" during a time when Dr. Berg knew Dr. Bradley was abusing his patients.[230] These facts, if plead in an amended complaint, could state viable claims of medical negligence if accompanied by an allegation that the failure of either Dr. Scott or Dr. Berg to take appropriate steps to protect their patients from Dr. Bradley under these circumstances constituted a deviation from the applicable standard(s) of care which proximately caused injury to the patient.[231] Alternatively, to the extent the facts do not reveal that the alleged negligence occurred in connection with the delivery of "health care or professional services rendered," as

226. *See, e.g., Ortiz,* 905 S.W.2d at 611 ("Merely volunteering to be on-call at a hospital does not, in and of itself, establish a doctor-patient relationship.") (citation omitted).

227. *See* 18 *Del. C.* § 6801.

228. To the extent class plaintiffs' allegations in the amended complaint indicate that a doctor-patient relationship existed between Dr. Ludwicki and Dr. Bradley's former patients, the allegations also suggest that any such doctor-patient relationship began only after the patients' relationship with Dr. Bradley terminated. *See* Am. Compl. ¶ 45 ("The improper touching was cited as the reason patients' parents terminated the relationship with Bradley and came to Ludwicki's practice."). Therefore, Dr. Ludwicki's failure to protect those patients with whom he had a doctor-patient relationship could not have proximately caused them injury and cannot form the basis of a viable claim. *See Money v. Manville Corp. Asbestos Disease Comp. Trust Fund,* 596 A.2d 1372, 1375 (Del.1991) ("[B]efore the question of proximate cause may be submitted to the jury, the plaintiff is required to establish a *prima facie* case on that issue.").

229. *See* Pls.' Opp. to Scott at ¶ 4 ("Dr. Scott and Bradley were the only two pediatric physicians employed by Bayside at the time. Accordingly, Dr. Scott and Bradley would treat each others' patients when either one of them was unavailable.") (citations to record omitted).

230. *See* Pls. Opp. to Berg at ¶ 4.

231. *See* 18 *Del. C.* §§ 6801(7), 6853. Of course, any such amended complaint would also have to be accompanied by an "affidavit of merit" that complies with § 6853(a).

required by the medical negligence statute,[232] the patients of Drs. Scott and Berg may still be able to assert their negligence claims based upon Restatement Second § 315(b) if they can establish that the doctor-patient relationship is such that it should give rise to a "duty to aid or protect" under Restatement Second § 314A.[233]

In addition to their arguments that Drs. Scott and Berg owed duties of protection to patients they shared with Dr. Bradley, class plaintiffs have also vaguely alleged in their amended complaint that Dr. Ludwicki "referred patients to Bradley when he was unavailable." [234] The Court cannot ignore the legal significance of this allegation in light of the Supreme Court's recent decision in *Spicer v. Osunkoya*.[235] There, the Court considered "whether a doctor owes a duty of care to a patient after the doctor has referred the patient to a specialist." [236] The Court held that the referring doctor had no duty to his patient after the referral because: (1) the patient did not allege that the referring doctor knew or should have known that the specialist was incompetent; (2) the first doctor had no further involvement in the treatment or care of the patient after the referral; and (3) the specialist decided on a treatment based on his own independent medical diagnosis.[237] Importantly, the Supreme Court noted that "[t]he holding would be different if the original physician had reason to know that the specialist was incompetent." [238] Under such circumstances, the referring physician would be liable to his patient because the negligence (the negligent referral) occurred while the doctor still owed a duty to his patient.[239]

---

**232.** *See* 18 *Del. C.* §§ 6801(7).

**233.** This court has previously recognized the "unique" relationship that exists between a patient and her doctor which requires affirmative acts, such as filling out an insurance form, to uphold a physician's duty of care. *See Murphy v. Godwin*, 303 A.2d 668, 674 (Del.Super.1973). Furthermore, our Supreme Court has recognized that the psychiatrist-patient relationship is a "special relationship" that created an affirmative duty on the part of a psychiatrist to persons other than the patient to exercise reasonable care in the treatment and discharge of the psychiatric patient when the psychiatrist knew or should have known of the patient's dangerous propensities. *See Naidu v. Laird*, 539 A.2d 1064, 1072 (Del.1988). By implication, the "special relationship" between a psychiatrist and a patient that creates a duty to protect others from the patient might likewise apply to protect the patient from others, if the risk of harm to the patient is or should be appreciated by the physician. *See, e.g., Dawe v. Dr. Reuven Bar–Levav & Associates, P.C.*, 485 Mich. 20, 780 N.W.2d 272, 275 (2010) ("[T]he common-law duty *not only requires a psychiatrist to protect his or her patients* but also to warn third persons . . . .") (emphasis supplied). The final determination regarding the viability of such a claim must await the filing of the amended claim and appropriate motion practice.

**234.** Am. Compl. ¶ 103.

**235.** 32 A.3d 347 (Del.2011).

**236.** *Id.* at 349.

**237.** *Id.* at 350.

**238.** *Id.*.

**239.** In *Spicer*, Delaware joined the majority of jurisdictions in recognizing that negligent referral can be a basis for liability. *See, e.g.*, 85 A.L.R.2d 889 § 6[a] ("Where one physician or surgeon calls in another . . ., it has been held . . . that the physician or surgeon doing the calling is not liable . . ., at least where there was no negligence in the selection of the one called in."); *Greenwell v. Aztar Indiana Gaming Corp.*, 268 F.3d 486, 490 (7th Cir.2001) ("Steering a patient to a doctor who commits malpractice is not itself malpractice or otherwise tortuous unless the steerer believes or should realize that the doctor is substandard . . . ."); *Reed v. Bascon*, 124 Ill.2d 386, 125 Ill.Dec. 259, 530 N.E.2d 417, 420 (1988) ("A referring physician will be held liable for the wrongful acts of another doctor if he failed to exercise due care in referring the

Class plaintiffs' factual allegations that Dr. Ludwicki: (1) knew of Dr. Bradley's misconduct towards his patients as early as 1996 and (2) possibly referred his patients to Dr. Bradley after that time, suggest that a claim of negligent referral might exist against Dr. Ludwicki for those patients he referred to Dr. Bradley after 1996. Because Delaware's medical negligence statute governs the duty of care owed by a physician to his patients while rendering "healthcare," a claim of negligent referral would have to be plead within the parameters of that statute. The Court gives those class plaintiffs who, in good faith, can allege negligent referral leave to amend in order to do so.

The Court recognizes that the possible negligence claims against the individual defendants that are the subject of the Court's order granting leave to amend are claims that rest with individual plaintiffs (perhaps very few) within the class, not with the entire class as currently certified. What impact, if any, these individual claims might have on the current class action status of this litigation has not been considered here. Such consideration shall await any amended complaints that might be filed and any appropriate motion practice that might be initiated in response to such filings.[240]

## VI.

Based on the foregoing, the Medical Society defendants' motion to dismiss is **GRANTED in Part (with prejudice) and**

**DENIED in Part (as to claims based on Restatement Second § 324A(c)).** The motions to dismiss brought by Dr. Ludwicki, Dr. Scott and Dr. Berg are **GRANTED** and the amended complaint as to them is **dismissed in part with prejudice and in part without prejudice.** As to any claim of nonfeasance under Restatement Second § 315(a) arising from an alleged "special relationship" between the individual defendants and Dr. Bradley, the amended complaint is **dismissed with prejudice** as the Court is satisfied, as a matter of law, that no such relationship existed. As to claims of medical negligence that might be brought by patients of the individual defendants, or claims of common law negligence that might be brought by these patients under Restatement Second § 315(b) as specified within this opinion, the amended complaint is **dismissed without prejudice and with leave given to these individual plaintiffs either to amend the class action complaint or to file separate complaints** to assert these claims as they deem appropriate, in accordance with this opinion, within thirty (30) days of this order.

**IT IS SO ORDERED.**

patient to that doctor."); *Stovall v. Harms*, 214 Kan. 835, 522 P.2d 353, 357 (1974) (same); *Moulton v. Huckleberry*, 150 Ore. 538, 549, 46 P.2d 589 (1935) (same); *Graddy v. New York Medical College*, 19 A.D.2d 426, 243 N.Y.S.2d 940, 944 (1963) (same); *Pied Piper v. Datanational Corp.*, 901 F.Supp. 212, 215 (S.D.W.Va.1995) (same); *Moore v. Lee*, 109 Tex. 391, 397–98, 211 S.W. 214 (Tex.1919)

(same); *Beaumont Spine Pain & Sports Med. Clinic, Inc. v. Swan*, 2011 WL 379168, at *6 (Tex.App. Feb. 3, 2011) (same).

**240.** By granting leave to amend under the liberal Rule 15 standard, the Court does not intend to foreclose Rule 12 or Rule 56 motion practice with respect to any amended complaint(s) that might be filed.