# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

The Estate of Shyuan Hsia, by and
through Lynn Chao, Executrix and
Personal Representative of the Estate
of Shyuan Hsia, et al.,

        Plaintiffs,

v.

KAPG Hockessin Senior Housing
Opco, LLC, d/b/a The Summit,
Hockessin Senior Housing I, et al.,

        Defendants.

v.

Kevin Kelly, Thomas Terranova,
Timothy Terranova, et al.,

        Third-Party Defendants.,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. N25C-04-270 FJJ

Submitted: March 11, 2026
Decided:   March 24, 2026

## OPINION AND ORDER
*on Third Party Plaintiff, KAPG Hockessin Senior Housing, OPCO, LLC's
Motion to Amend the Third Party Complaint and Third Party Defendants
Timothy and Thomas Terranova's Motion for Judgment on the Pleadings*
**DENIED in part, GRANTED in part.**

*Timothy A. Dillon, Esquire,* McCann, Dillon, Jaffee & Lamb, LLC, Wilmington,
Delaware, *Attorney for Plaintiff.*

Don Gouge, Esquire, Wilmington, Delaware, *Attorney for Third Party Defendant
Kevin Kelly.*

Kevin Buttery, Esquire, Wilmington, Delaware, *Attorney for Defendant KAPG Hockessin Senior Housing OPC, LLC*

*Randall S. MacTough, Esquire and Colleen Shields, Esquire*, Eckert Seamans Cherin & Mellott, LLC, *Attorneys for Third Party Dr. Carolyn Ianni.*

*Maria Granaudo, Esquire*, Burns and White, Wilmington, Delaware, *Attorney for Third Party Defendant Dr. Jennifer Christian.*

Jennifer Sutton, Esquire, O'Hagan Meyer, Wilmington, Delaware, *Attorney for Defendant American Trust Senior Care, LLC, Virginia Gray, Hockessin Senior Housing I.*

Robert M. Greenberg, Esquire, Tybout, Redfearn & Pell, Wilmington, Delaware, *Attorney for Third-Party Defendant Timothy Terranova.*

*Maura L. Burke, Esquire and Carl Neff*, Pierson Ferdinand, LLP, Wilmington, Delaware, *Attorneys for Defendant Discovery Senior Living, LLC.*

*John D. Balaguer, Esquire and Clair McCudden, Esquire,* Balaguer, Milewski & Imbrogno, Wilmington, Delaware, *Attorneys for Third-Party Defendants Thomas Terranova and Timothy M. Terranova.*

**Jones, J.**

This matter arises from the fatal assault of Shyuan Hsia ("Hsia") by Kevin Kelly ("Kelly") while Hsia was under the care of KAPG Hockessin Senior Housing OPCO, LLC D/B/A The Summit (hereinafter referred to as "Summit"). Summit is a licensed Assisted Living Facility that operates the Shine Memory Care Unit ("MCU") to care for residents with Alzheimer's, dementia or other mental/memory impairments. Kelly and Hsia were residents in Summit's MCU. It is alleged that on August 5, 2024, while both were under the care of Summit, Kelly, who suffers from dementia, entered Hsia's private room and assaulted her, leading to her death. Hsia's estate and beneficiaries filed suit against Summit alleging that Summit's negligence caused her death.

Timothy Terranova and Thomas Terranova are each the nephew and power of attorney for Kelly. Timothy has power of attorney over medical decisions under Delaware Code Title 16 Chapter 25 and both Timothy and Thomas have durable personal power of attorney under Delaware Code Title 12, Chapter 49A.

Summit filed an original third-party complaint against a number of defendants including Timothy and Thomas.[1] In its original third-party complaint, Summit alleged that as POAs for Kelly, Timothy and Thomas, "were responsible for making decisions necessary for Kevin Kelly's health and wellbeing, as well as arranging for and facilitating his personal and health care services not provided by

---

[1] Docket Item ("D.I.") 16.

3

the Summit."[2]  Summit contended that Timothy and Thomas failed to fulfill these duties while Kelly was a resident at Summit by poorly managing his medication regiment in light of advancing mental deterioration and concerns of aggressive behavior.  Summit claims that Timothy and Thomas were negligent, in their capacity as POAs which resulted in Kelly's assault of Hsia and the subsequent injuries and death for which plaintiffs allege damage in the underlying complaint.

Timothy and Thomas filed a motion for judgment on the pleadings.[3]  The argument advanced by Timothy and Thomas was that they owed no duty to Summit or Hsia and, as such, a claim based on negligence was not proper.  At oral argument on the motion for judgment on the pleadings, Summit requested that the Court grant them leave to file an amended third-party complaint.  Summit filed its motion to file an amended third-party complaint and attached to the motion the proposed amended third-party complaint.[4]  Timothy and Thomas have opposed the motion.[5]

In the proposed third-party complaint Summit realleges negligence claims against Timothy and Thomas.  In addition, Summit has alleged the following new allegations:

> 22.    Prior to Kevin Kelly's admission to The Summit, it is believed that he resided at home with family,

[2] *Id.* at ¶12.
[3] D.I. 92.
[4] D.I. 157.
[5] D.I. 164.

4

including Third-Party Defendants, Timothy Terranova and Thomas Terranova.

23. Given that Third-Party Defendants, Timothy Terranova and Thomas Terranova were appointed as Kevin Kelly's General Durable Powers of Attorney, and Timothy Terranova was appointed as Kevin Kelly's Medical Power of Attorney, it is believed and averred that these two Third Party Defendants were intimately familiar with Kevin Kelly's dementia-related behaviors and aggression.

24. On August 15, 2023, an Application for Residency was submitted to The Summit on behalf of Kevin Kelly.

25. The August 15, 2023 Application for Residency lists Thomas Terranova and Timothy Terranova as powers of attorney.

26. It is unclear who signed Kevin Kelly's Application for Reidencey, but it is believed and therefore averred that it was signed by either Thomas Terranova or Timothy Terranova.

27. According to Kevin Kelly's Application for Residency, he had previously been hospitalized on 6/26/23 because "he took too many days of medicine".

28. It is believed and therefore averred that the reason Kevin Kelly's 6/26/23 hospitalization was far more serious than a simple medication error.

29. A more serious recent hospitalization would have been pertinent information to The Summit in deciding whether to admit Kevin Kelly as a resident.

30. It is believed and therefore averred that Timothy Terranova and Thomas Terranova consciously and intentionally concealed information from The Summit

5

regarding Kevin Kelly's 6/26/23 hospitalization as well as his overall aggressive behaviors at home in order to facilitate admission to The Summit.

31. Prio to August 6, 2024, the Third-Party Defendants were advised that Kevin Kelly's behavior was becoming more aggressive, and that his medication regiment should be adjusted.

32. Notwithstanding these warnings, the Third-Party Defendants failed to timely address the concerns surrounding Keinv Kelly's aggressive behavior.

33. As a result, Kevin Kelly continued on inadequate mediation for his advancing mental deterioration.

34. As a result of Kevin Kelly's poorly managed medication regiment, he assaulted Shyan Hsia on August 6, 2024 causing the injuries for which the Plaintiff now seek damages.

35. Third-Party Defendants' negligence caused the assault Shyuan Hsia on August 6, 2024 and the injuries for which the Plaintiff now seek damages, not Defendant/Third Party Plaintiff.[6]

Timothy and Thomas have renewed their motion for judgment on the pleadings and have opposed the motion to amend the third-party complaint on the grounds that the proposed third-party complaint does not state a valid claim for relief. Further, they argue that to allow the amendment would be futile because on a motion to dismiss or a motion for judgment on the pleadings, the Court would grant such a motion.

---

[6] D.I. 157, Ex. A, at 5-7.

## STANDARD OF REVIEW

Delaware Superior Court Civil Rule 12(c) allows any party to move for judgment on the pleadings "after the pleadings are closed but within such time as not to delay the trial."[7] The standard of review for a motion for judgment on the pleadings is "almost identical" to that of a motion to dismiss.[8] Thus, "the Court must accept all the complaint's well-pled facts as true and construe all reasonable inferences in favor of the non-moving party."[9] A court will grant a motion for judgment on the pleadings "where there are no disputed facts and the moving party is entitled to judgment as a matter of law."[10]

It is well established that leave to amend under Superior Court Rule 15(a) should "be freely given when justice so requires."[11] "A motion to amend must be denied, however, if the amended complaint would not survive a motion to

---

[7] Del. Super. Ct. Civ. R. 12(c).

[8] *Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at *8 (Del. Super. Ct., Aug. 16, 2021) (quoting *Silver Lake Off. Plaza, LLC v. Lanard & Axilbund, Inc.*, 2014 WL 595378, at *6 (Del. Super. Ct., Jan. 17, 2014)); *see also DuPont De Nemours, Inc. v. Hemlock Semiconductor Operations LLC*, 2024 WL 3161799, at *6 (Del. Super. Ct., June 10, 2024) ("The standard for a motion for judgment on the pleadings is almost identical to the standard for a motion to dismiss.").

[9] *Silver Lake Off. Plaza, LLC v. Lanard & Axilbund, Inc.*, 2014 WL 595378, at *6 (Del. Super. Ct., Jan. 17, 2014) (quoting *Blanco v. AMVAC Chem. Corp.*, 2012 WL 3194412, at *6 (Del. Super. Ct., Aug. 8, 2012)) (internal quotations omitted).

[10] *Tibco Software Inc. v. Mediamath, Inc.*, 2019 WL 3034781, at *2 (Del. Super. Ct., July 10, 2019) (citing *O'Leary v. Telecom Res. Serv., LLC*, 2011 WL 379300, at *3 (Del. Super. Ct., Jan. 14, 2011)); *see also Silver Lake*, 2014 WL 595378, at *6.

[11] Del. Super. Ct. Civ. R. 15(a); *see also Cook v. J & V Trucking Co., Inc.*, 2020 WL 5846630, at *2 (Del. Super. Ct., Sept. 30, 2020); *see also Mullen v. Alarmguard of Delmarva, Inc.*, 625 A.2d 258, 263 (Del. 1993).

dismiss."[12]  Where the amendment would be futile, this Court MUST deny a plaintiff's application to amend the complaint.[13]

## ANALYSIS

### I.  The Negligence Claim Fails for Lack of Duty Owed.

Both the original and the potential amended third-party complaint contain a claim for negligence against Timothy and Thomas.[14]  Due to a lack of duty, the negligence claim fails.

At oral arguments on February 20, 2026, Summit admitted that their initial pleading did not establish duty on the part of the Terranovas simply for holding power of attorney over Kelly.[15]  Summit further conceded they were not aware of any authority that would support the proposition that a power of attorney could be held liable for the negligent acts of a principal[16] and their subsequent filings did nothing to fill these gaps.  The Court heard further oral argument on March 20, 2026.  At that oral argument Summit again conceded that there was no authority that would support a duty owed by Tom and Tim towards either it or Hsia.

---

[12] *Wilmer v. Ocwen Fin. Corp.*, 2016 WL 3366060, at *2 (Del. Super. Ct., May 31, 2016) (citing *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 2008 WL 555919, at *1 (Del. Super. Ct., Feb 29, 2008)).

[13] *Clark v. State Farm Mut. Auto. Ins. Co.*, 131 A.3d 806, 811 (Del. 2016) (citing *Cornell Glasgow LLC v. La Grange Props., LLC*, 2012 WL 2106945, at *12 n.134 (Del. Super. Ct., June 6, 2012)); *see also Doe 30's Mother v. Bradley*, 58 A.3d 429, 446 (Del. Super. Ct., 2012) ("A motion to amend will not be granted, however, if the amendment would be futile.").

[14] D.I, 16, at 6; D.I. 157, Ex. A, at 7.

[15] D.I. 163, Transcript of Oral Argument on MJP, at 22:16 - 23:3.

[16] Id. at 23:4-9.

Turning to the statutory powers at issue, Delaware Code Title 16 Chapter 25 discusses the duties and potential liabilities of agents. Section 2517 states that an agent has a fiduciary duty to the principal. Section 2523 goes on to declare that an agent "is not subject to civil or criminal liability … for a health-care decision made in a good faith effort to comply with §2517 of this title." Negligence is not mentioned anywhere in Title 16, Chapter 25 and §2524, entitled "Prohibited conduct; damages," does not mention any claims that a healthcare provider or facility would have against an agent. Delaware Code Title 12, Chapter 49A is the same in that it establishes a fiduciary duty and fails to mention either negligence or third-party actions such as the one asserted in this case.

Finally, the Court's own research has not found any caselaw to support the idea that an agent acting under a power of attorney can be held liable for the negligent acts of the principal. More specific to the present case, a Connecticut court recognized "a power of attorney does not create a fiduciary duty between the agent and a hospital rendering medical care to the principal."[17]

To the extent Summit is asking the Court to expand the liability of the holder of a power of attorney, whether it is a general power of attorney or a durable medical power of attorney, I decline to do so. Such a decision would have a chilling effect on the willingness of people who are asked to assume the role of

---

[17] *Pyshnyi v. Connecticut Hospice, Inc.*, 2014 WL 929346, at *3 (Conn. Super. Ct., Feb. 3, 2014).

power of attorney from taking on that task. We live in an era where people are living longer and the need for people to serve as powers of attorney has become greater. In the absence of an existing duty that applies to holders of a power of attorney, this Court declines to create liability where it does not presently exist. To the extent that public policy requires that the holder of a power of attorney be responsible in a situation such as the parties find themselves in the present case, that is a decision for the General Assembly, not this Court. Accordingly, the third-party negligence claim against the Terranovas fails as a matter of law for a lack of duty owed to Summit.

## II. Fraud Claim Fails for Lack of Specificity and Detrimental Reliance.

Under Delaware law, a party must allege the following elements to state a claim for fraud:

> (1) a false representation made by the defendant; (2) the defendant knew or believed the representation was false or was recklessly indifferent to its truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted or refrained from acting in justifiable reliance on the representation; and (5) damage resulted from such reliance.[18]

---

[18] *Valley Joist BD Holdings, LLC v. EBSCO Indus., Inc.*, 269 A.3d 984, 988 (Del. 2021) (citing *Prairie Capital III, L.P. v. Double E Hldg. Corp.*, 132 A.3d 35, 49 (Del. Ch. 2015)); *see also to Matrix Parent, Inc. v. Audax Mgmt. Co., LLC*, 319 A.3d 909, 932 (Del. Super. Ct., 2024).

"Superior Court Civil Rule 9(b) heightens the pleading standard for fraud claims"[19] and requires that "the circumstances constituting fraud … shall be stated with particularity."[20] "The factual circumstances that must be stated with particularity refer to the time, place, and contents of the false representations; the facts misrepresented; the identity of the person(s) making the misrepresentation; and what that person(s) gained from making the misrepresentation."[21] "While knowledge may be pled generally, when a plaintiff pleads a claim of fraud that charges that the defendants knew something, it must allege sufficient facts from which it can reasonably be inferred that this 'something' was knowable and that the defendants were in a position to know it."[22]

In *Valley Joist BD Holdings, LLC v. EBSCO Indus., Inc.*, the Delaware Supreme Court overruled a lower court's holding "that [Plaintiff] failed to demonstrate facts sufficient to support a reasonable inference that [Defendant] knew the representations were false at the time they were made."[23] There, the *Valley Joist* Court examined specific timelines and quotes received by the parties to determine whether the allegations were specific enough to satisfy Rule 9(b).[24]

---

[19] *Matrix Parent, Inc. v. Audax Mgmt. Co., LLC*, 319 A.3d 909, 933 (Del. Super. Ct., 2024) (citing *Valley Joist BD Hldgs., LLC v. EBSCO Indus., Inc.*, 269 A.3d 984, 988 (Del. 2021)).
[20] Del. Super. Ct. Civ. R. 9; *see also Valley Joist*, 269 A.3d at 988.
[21] *Valley Joist*, 269 A.3d at 988 (citing *Browne v. Robb*, 583 A.2d 949, 955 (Del. 1990)).
[22] *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch., 2006) (citing *H–M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 145 (Del. Ch., 2003)); *see also Matrix*, 319 A.3d at 934 (citing *Valley Joist*, 269 A.3d at 988)).
[23] *Valley Joist*, 269 A.3d at 989.
[24] *Id.* at 988-90.

The Court ultimately found "allegations that the [Defendant] transition employee, Brasher, told Juedemann that [Defendant] knew of the structural damage at Building #14 before closing and received quotes before closing estimating that repairs would cost $3 to 4 million were sufficient to allege knowledge."[25]

When viewed in this light, the present allegations do not contain enough specificity to satisfy the Rule 9(b) particularity requirements. Here, the allegations of something "knowable" and the fact that "defendants were in a position to know it" are summed up below:

> 22. Prior to Kevin Kelly's admission to The Summit, it is believed that he resided at home with family, including Third-Party Defendants, Timothy Terranova and Thomas Terranova.
>
> 23. Given that Third-Party Defendants, Timothy Terranova and Thomas Terranova were appointed as Kevin Kelly's General Durable Powers of Attorney, and Timothy Terranova was appointed as Kevin Kelly's Medical Power of Attorney, it is believed and averred that these two Third Party Defendants were intimately familiar with Kevin Kelly's dementia-related behaviors and aggression.
>
> 24. On August 15, 2023, an Application for Residency was submitted to The Summit on behalf of Kevin Kelly.
>
> 25. The August 15, 2023 Application for Residency lists Thomas Terranova and Timothy Terranova as powers of attorney.

---

[25] *Id.* at 990.

26. It is unclear who signed Kevin Kelly's Application for Residency, but it is believed and therefore averred that it was signed by either Thomas Terranova or Timothy Terranova.

27. According to Kevin Kelly's Application for Residency, he had previously been hospitalized on 6/26/23 because "he took too many days of medicine".

28. It is believed and therefore averred that the reason for Kevin Kelly's 6/26/23 hospitalization was far more serious than a simple medication error.

29. A more serious recent hospitalization would have been pertinent information to The Summit in deciding whether to admit Kevin Kelly as a resident.

30. It is believed and therefore averred that Timothy Terranova and Thomas Terranova consciously and intentionally concealed information from The Summit regarding Kevin Kelly's 6/26/23 hospitalization as well as his overall aggressive behaviors at home in order to facilitate admission to The Summit.[26]

This is simply not comparable to the allegations laid out in *Valley Joist*.

At oral arguments on March 20, 2026, Summit indicated that the basis of its fraud claim came from a nurse who worked at the facility who would testify that she had a "sense" that the Terranovas knew more than they were letting on about Kelly's aggressive tendencies. A "sense" or suspicion is not enough to meet the particularity standard. In short, there is nothing but a bare allegation that the reason for Kelly's hospitalization *may* not have been due to his medication. It

---

[26] D.I. 157, Ex. A, at 5-7.

cannot reasonably be inferred from these allegations that the Terranovas intentionally hid anything from Summit, and the particularity requirement is not met.

Even if the allegations met the particularity requirement, there is still an issue with the reliance element. As pointed out above, the elements of a fraud claim include "(4) the plaintiff acted or refrained from acting in justifiable reliance on the representation; and (5) damage resulted from such reliance."[27] In *NACCO Indus., Inc. v. Applica Inc.*, the Delaware Court of Chancery explained how the reliance and damages elements require causation in a claim for fraud:

> To be actionable, a false statement must cause harm. *H–M Wexford LLC,* 832 A.2d at 144–45. The necessary causal connection has two dimensions. First, the false statement must be a factual cause of the harm in the sense that the harm would not have occurred but for the false statement. Second, the false statement must be a legal cause of the harm, meaning that the false statement must be a sufficiently significant cause of the harm to impose liability. Restatement (Second) of Torts §548A, cmt. a-b; *see* 37 Am.Jur.2d Fraud and Deceit §281 (discussing requirements of but-for and proximate cause). *The second limitation recognizes that the harm flowing from an event in the but-for sense at some point becomes too attenuated to give rise to liability.*[28]

---

[27] *Valley Joist*, 269 A.3d at 988 (citing *Prairie Capital III, L.P. v. Double E Hldg. Corp.*, 132 A.3d 35, 49 (Del. Ch. 2015)); *see also to Matrix Parent, Inc. v. Audax Mgmt. Co., LLC*, 319 A.3d 909, 932 (Del. Super. Ct. 2024).

[28] *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 32 (Del. Ch. 2009) (emphasis added); *see also Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 815–16 (Del. Ch. 2014); *see also Yatra Online, Inc. v. Ebix, Inc.*, 2021 WL 3855514, at *14, n.135 (Del. Ch. Aug. 30, 2021), *aff'd*, 276 A.3d 476 (Del. 2022) (citing *In re Wayport, Inc. Litig.*, 76 A.3d 296, 325 (Del. Ch. 2013)) ("The fifth element—that 'the plaintiff was injured by its reliance'—injects a causation inquiry into the fraud cause of action.").

Thus, Summit must prove that Timothy and Thomas's alleged fraudulent statement was both the but-for and proximate cause of the deadly assault.

The assault that gave rise to this litigation occurred when Kelly had been in the Summit care facility for 323 days – that's more than ten months.[29] Summit had ample time to observe Kelly's demeanor, the progression of his dementia and his aggressive tendencies. During these ten months, Summit could have discovered if he was too aggressive to stay in their care facilities or changed their treatment to keep him away from the other members.[30] Summit's housing and observation of Kelly for such a period of time after the alleged false statement presents a clear break in the reliance / causation element. Accordingly, the fraud claim also fails.

### III. Motion to Amend is Futile and Motion for Judgment on the Pleadings is Granted.

Based on the above, the motion to amend is futile. "A motion for leave to amend a complaint is futile where the amended complaint would be subject to dismissal under Rule 12(b)(6) for failure to state a claim."[31] As discussed *supra*,

---

[29] D.I. 164, at 1.

[30] In fact, it was revealed at oral arguments on March 20, 2026, that there were at least two prior incidents of aggression / assault involving Kelly while he was living at Summit that occurred before the deadly assault on the plaintiff and that Summit was aware of these incidents. This is enough to break the reliance element.

[31] *Clark v. State Farm Mut. Auto. Ins. Co.*, 131 A.3d 806, 811–12 (Del. 2016) (quoting *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011)) (internal quotations omitted); *see also Doe 30's Mother v. Bradley*, 58 A.3d 429, 446 (Del. Super., Ct. 2012) (citing *Cartanza v. LeBeau*, 2006 WL 4804647, at *2 (Del. Ch., Mar. 28, 2006)); *see also Wilmer v. Ocwen Fin. Corp.*, 2016 WL 3366060, at *2 (Del. Super. Ct., May 31, 2016) (citing *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 2008 WL 555919, at *1 (Del. Super. Ct., Feb 29, 2008)) ("A motion to amend must be denied, however, if the amended complaint would not survive a motion to dismiss.").

the negligence claim fails due to a lack of duty between the parties, and the fraud claim fails for both a lack of specificity and reliance. Accordingly, the motion to amend is futile and therefore **DENIED**. With no further outstanding claims against Tim and Thomas Terranova, the Motion for Judgment on the Pleadings is **GRANTED** in its entirety.

  **IT IS SO ORDERED**.

_/s/ Francis J. Jones, Jr._
Francis J. Jones, Jr., Judge

cc:  File&ServeXpress